Argued November 30; affirmed December 14, 1943

# PEARCY v. COLUMBIA GROWERS & PACKING CORPORATION ET AL.

### (143 P. (2d) 913)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK and HAY, Associate Justices.

*W. C. Winslow*, of Salem, for appellant.

*Verne Dusenbery*, of Portland (Henry R. Newton, of Spokane, Wash., on the brief) for respondents.

BAILEY, C. J. This suit was instituted by H. L. Pearcy, doing business as H. L. Pearcy Nursery Company, against Columbia Growers and Packing Corporation, and E. W. Smidt and Adelaide W. Smidt, his wife, to foreclose a lien for nursery stock furnished by the plaintiff to the defendant corporation. That defendant was served with summons and complaint, but made no appearance in the case. In its decree the circuit court entered judgment in favor of the plaintiff and against the corporation for the value of the nursery stock, denied the plaintiff any lien on the real property on which the nursery stock had been planted, and dismissed the suit as to the individual defendants. From this decree the plaintiff has appealed.

The principal question here involved is whether the plaintiff's claim of lien was filed within six months after the plaintiff furnished the nursery stock for "setting out and planting" on the land described in the com-

plaint. The appeal necessitates the construction of §§ 37-201 to 37-206, inclusive, O. C. L. A., commonly referred to as the nursery stock lien law, and especially § 37-202, O. C. L. A., which provides that notice of lien must be filed "within six months after furnishing said nursery stock for setting out or planting on such land". In stating the facts we shall assume that the evidence is sufficient to prove that the nursery stock furnished by the plaintiff was set out on the real property described in the complaint and that the defendant corporation had some interest in that realty at the time the trees were furnished and set out by the plaintiff.

On May 29, 1939, the plaintiff entered into a written contract with the defendant corporation by the terms of which the plaintiff agreed to sell to the defendant corporation and it agreed to purchase 6,000 filbert trees at a price of forty cents per tree. The plaintiff further agreed to plant the trees for an additional payment of ten cents per tree. It was also agreed that the plaintiff would "replace any trees that may die during the first year after planting, at no expense to the" defendant corporation. The contract further provided that the defendant corporation would "at the time of making demand for the planting of said number of trees, or of any trees, deposit with the First National Bank, McMinnville, Oregon, or any other depository as may be hereafter designated by agreement of the parties hereto, a sufficient sum of money to cover the total cost of such number of trees as may have been called for by them [the defendant corporation], including the cost of planting and shading of such number of trees; said sum to be deposited with an instruction to the said depository that it may pay said sum to" the plaintiff upon his presentation to the bank of satis-

factory proof that he had "planted and shaded the required number of trees, in accord with the terms of this agreement".

In April, 1940, the plaintiff furnished to the defendant corporation and planted on the land described in the complaint 5,919 filbert trees, which were all the trees originally called for by the defendant corporation. The trees so furnished and planted were satisfactory to the defendant corporation and were furnished and planted by the plaintiff in accordance with the terms of the contract between the parties. During the following year one hundred of the trees died, and in the spring of 1941 they were replaced by the plaintiff with other trees. The trees did not die because of any defect in them or in their planting. It is expected that "anywhere from one per cent up to five per cent of the trees" will fail to live.

The defendant corporation did not at any time deposit with the First National Bank of McMinnville, Oregon, or with any other depository any sum of money for payment to the plaintiff. And it has failed and refused to pay the plaintiff for the trees furnished it by the plaintiff.

On July 10, 1941, the plaintiff filed with the county clerk of Yamhill county, in which county the land in question is situated, a notice of claim of lien for 5,919 filbert trees at forty cents per tree, or a total of $2,367.60. In the notice of lien it was stated that the trees were furnished pursuant to the above-mentioned contract of May 29, 1939, between the plaintiff and the defendant corporation; that the agreed price of such nursery stock was forty cents per tree, "except that trees used for replanting were to be furnished free of charge"; that the defendant corporation agreed to pay

cash for the 5,919 trees originally planted; but that it had paid no part of the purchase price.

The two sections of the nursery stock lien law with which we are here concerned thus read:

"Any person or persons who shall furnish nursery stock of the value or agreed price of twenty-five dollars ($25) or more, for planting on any land, at the request of the owner, or with his knowledge or consent, shall have a lien on the land upon which such nursery stock is set out and planted, which lien shall be preferred to every other lien, mortgage or encumbrance of a subsequent date, unless such owner or person having or claiming an interest therein within three days after having obtained knowledge of such planting and setting out of nursery stock, shall give notice that he will not be responsible for the same, by giving notice by mail to such person or persons so furnishing such nursery stock."—§ 37-201, O. C. L. A.

"It shall be the duty of every person claiming the benefits of this act to file with the county clerk where the land is situated, within six months after furnishing said nursery stock for setting out or planting on such land, a statement of said claimant verified by his oath, containing a bill for such nursery stock so furnished; the substance of the contract and the name of the contractor, together with a description of the land by metes and bounds accurately describing the land for or in which such stock was furnished for planting, also a statement showing the total amount of the demand of such claimant after deducting all setoffs and counter claims, and that the amount claimed is a true, actual and bona fide existing debt."—§ 37-202, O. C. L. A.

This is the first time that this court has been asked to interpret any part of the nursery stock lien law. The act differs in many particulars from the mechanics' and materialmen's lien law, title 67, chapter 1 (§§ 67-

101 to and including 67-113), O. C. L. A. Although the two enactments are dissimilar in many respects, the construction which this court has placed on the latter law, as to time within which notice of lien shall be filed, is helpful in construing § 37-202, *supra,* which fixes the time for filing notice of a nursery stock lien.

■■ A statute creating a right to a lien is remedial in character and should be liberally construed in favor of those for whose benefit it was enacted. Nevertheless any one claiming such a lien must show substantial compliance with the requirements of the statute and bring himself within its provisions: *Craig v. Crystal Realty Co.,* 89 Or. 25, 173 P. 322, and authorities therein cited.

■ In the instant case the nursery stock was furnished by the plaintiff to the defendant corporation pursuant to a written contract. According to the terms thereof the corporation was to secure to the plaintiff payment for the trees as they were delivered, by depositing funds in a bank designated, which bank was to pay the money to the plaintiff as the trees were planted by him. In other words, as stated in the notice of lien, the corporation was to pay cash for the trees as the same were delivered and planted. When the plaintiff, sometime in April, 1940, completed furnishing to and planting for the defendant corporation the 5,919 filbert trees called for by it, he became entitled to payment of fifty cents each for those trees, or a total of $2,959.50. Of that amount, $2,367.60 represented the purchase price of the trees, and the balance was the charge for planting them. Under the nursery stock lien law, as interpreted by the litigants in this suit, and properly so, we believe, the right of lien is limited to the agreed price or reasonable value of the nursery stock, without pro-

vision for the cost of labor in setting out and planting the same.

■ The plaintiff, in order to be entitled to a lien on the land here involved for the reasonable value or the agreed price of the filbert trees furnished by him to the defendant corporation, was required to file a statement of his claim of lien with the county clerk ''within six months after furnishing said nursery stock for setting out or planting on such land'': § 37-202, O. C. L. A. The time within which notice of lien is to be filed is computed from the date of furnishing nursery stock and not from the performance of the contract between the plaintiff and the defendant corporation. The right to a lien does not arise from the contract, but from the furnishing of nursery stock: *Christman v. Salway*, 103, Or. 666, 675, 205 P. 541; *Dailey v. Cremen*, 80 Or. 183, 189, 156 P. 797.

The date of performance of the contract may coincide with the time of furnishing the nursery stock. For example, a contract may be limited to the furnishing of such stock and may provide that the delivery thereof extend over a period of time, in which case the time for filing the notice of lien would commence to run from the date of the last bona fide delivery, if that delivery were not unreasonably delayed, and such date would likewise be that of performance of the contract by the nurseryman: *Freeman v. Clark*, 28 N. D. 578, 149 N. W. 565. In such circumstances a notice of lien filed prior to the last delivery would be premature. See *Birkemeier v. Knobel*, 149 Or. 292, 309, 40 P. (2d) 694.

By another form of contract, and one not uncommon, the nurseryman for a fixed sum agrees to furnish, set out and cultivate nursery stock for a period of one or more years. Clearly, under such an arrange-

ment, the nurseryman would not have six months after the completion of his contract within which to file a notice of lien for the stock furnished by him. In the contract here at bar the parties specified a definite price for the trees and another for the planting. The number of trees to be paid for by the defendant corporation was that stated in the contract, or as many thereof as were actually called for by the corporation, and such trees were required to be furnished during the planting season of 1939-1940. Trees supplied in replacement of any that did not live during the first year were to be regarded as substitutes for the original trees and were not to be paid for by the corporation.

When the plaintiff delivered to the defendant corporation in April, 1940, the 5,919 filbert trees he became entitled to the payment therefor specified in the contract. And upon the failure of the defendant corporation to pay for the trees the plaintiff had a right to a lien on the land on which the trees were planted. In order to perfect his lien it was necessary for him to file a statement of his claim of lien within six months from the day in April, 1940, when he furnished the last of the 5,919 trees to the defendant corporation.

■ The plaintiff contends that his contract with the defendant corporation was not fully performed by him until sometime in the late winter of 1940 or early spring of 1941, at which time he furnished the defendant corporation one hundred trees in replacement of a like number of the original planting that had failed to live, and that consequently he had six months after furnishing such replacements within which to file his notice of claim of lien for the entire purchase price. Such a construction of the statute is not in harmony with the obvious purpose for which the law was en-

acted. It would postpone unduly the nurseryman's filing of notice of claim of lien and make the right to assert such claim dependent upon the performance of a contract rather than upon the furnishing of nursery stock.

It was to be expected, the plaintiff testified, that from one to five per cent of the trees planted would die during the first year. The hundred trees replaced by him were less than two per cent of the entire number originally furnished. The replacement of trees is somewhat analogous to a builder's remedying of defects in construction. In the latter case the time for filing a mechanics' or materialmen's lien ordinarily is not extended by performing such additional work.

In 18 R. C. L., Mechanics' Liens, § 65, page 934, with reference to the time for filing a claim of lien, we find the following:

"Generally, where a contract is regarded as completed, subsequently performing some service or furnishing some material to remedy a defect will not operate to extend the time for claiming a lien, or to revive a lien then expired. But where the owner insists that the building is not complete, and he will not accept it owing to some imperfections, it has been held that he is estopped to deny that the building was completed prior to the date of correcting such imperfections."

To the same effect this is said in an annotation in 54 A. L. R. at page 984:

"The rule seems to be well settled that, where a contract to furnish material is to be regarded as completed, a subsequent gratuitous furnishing of material in the nature of a substitution or replacement to remedy a defect in the material originally delivered will not operate to extend the time within which to claim a mechanics' lien."

See also, in this connection, *Fox & Co. v. Roman Catholic Bishop,* 107 Or. 557, 215 P. 178, and *Birkemeier v. Knobel,* supra.

In our opinion, the agreement on the part of the plaintiff as to replacement of trees did not extend the time within which he was required to file a notice in order to perfect his lien. The plaintiff did not file such notice within the time required by § 37-202, O. C. L. A.

The land described in the complaint was owned by The Federal Land Bank of Spokane in April, 1940, when the filbert trees were planted. On September 27 of that year the land bank entered into a contract with the defendant corporation whereby it agreed to sell the land to the latter. Thereafter, on July 13, 1941, three days after the plaintiff filed his notice of claim of lien, The Federal Land Bank of Spokane sold and conveyed the land to the defendant E. W. Smidt, who is now the legal owner of the property.

Counsel for the plaintiff stated in the oral argument that he was attempting to subject only the defendant corporation's interest in the land to the plaintiff's claim of lien. We have assumed, but without deciding, that whatever interest the corporate defendant had in the land would have been subject to the lien, if the claim therefor had been filed in time. It is argued by the defendants Smidt that the defendant corporation was at no time the owner of the land within the meaning of § 37-201, O. C. L. A. We find it unnecessary to pass upon that question at this time.

The decree appealed from is affirmed.