[No. 6303-1.   Division One.   March 12, 1979.]

IGNAC KSHENSKY, *Appellant,* v. PIONEER NATIONAL TITLE INSURANCE COMPANY, ET AL, *Respondents.*

*Steinberg & Steinberg* and *Jack Steinberg,* for appellant.

*Skeel, McKelvy, Henke, Evenson & Betts, William E. Evenson,* and *Ingrid W. Hansen,* for respondents.

ANDERSEN, J.—

## FACTS OF CASE

The facts are not disputed.

In 1964, Estera Kshensky divorced her then husband, Ignac Kshensky in King County, Washington. The divorce decree, which was entered following a trial, awarded the parties' Seattle residence to Ms. Kshensky as her sole and separate property.[1] The decree further provided that Mr. Kshensky would have a lien on half of any excess over $14,250 (the price they paid for the house in 1958) of the proceeds of any sale of the house, if he was living at the time of such sale.[2]

---

[1]The decree provided:

"IT IS ORDERED, ADJUDGED AND DECREED that the real property located at 431 Boylston East, Seattle, Washington, be and it is hereby awarded to the plaintiff as her sole and separate property, the said property being more particularly described as: . . ."

[2]The decree provided:

In 1977, some 12 years after the divorce, Ms. Kshensky sold her home to John Herrin (purchaser) for $61,000 cash and conveyed the property to him by statutory warranty deed. The purchaser had no actual knowledge of the divorce decree or the lien that it gave Mr. Kshensky. The purchase was financed by Metropolitan Federal Savings and Loan Association of Seattle (lender) which took a deed of trust on the property as security. The lender also performed the escrow services for the transaction. A title insurance policy was furnished to the purchaser by Pioneer National Title Insurance Company (title insurer). The title insurer also insured that the lender's deed of trust was the first lien on the property. Mr. Kshensky had no knowledge of the sale until after it had been consummated and after his former wife had left the state, and apparently the country as well. She took with her the money she received from the sale.

Mr. Kshensky thereupon sued Ms. Kshensky along with the purchaser, lender and title insurer claiming that based on the language of the divorce decree, they were obligated to pay him $23,375. He was apparently unable to obtain service of process on Ms. Kshensky. Later he voluntarily dismissed the action against the lender.

The trial court granted a summary judgment dismissing the purchaser and the title insurer. Mr. Kshensky appeals. On appeal, he only argues with reference to the dismissal of the purchaser, Mr. Herrin, and in his brief filed with this

---

"In the event the plaintiff shall sell the above mentioned property at any future time for a total sales price in excess of $14,250.00, then the defendant shall be entitled to a lien on the proceeds of such sale in a sum equal to one–half of the total sales price in excess of $14,250.00. . . .

". . . In the event the plaintiff shall sell said real property for a total selling price of $14,250.00 or less, then the defendant shall have no interest whatsoever in and to said property or the proceeds of said sale.

"In the event that at the time the plaintiff shall sell the said real property and the defendant is not then living, then all the provisions hereinabove with respect to any interest the defendant may have in the real property or the proceeds from sale thereof shall, upon his death, be a nullity, and his successors, assigns and heirs shall take nothing by reason thereof."

court concedes that the title insurer has no direct liability to him.

One issue is determinative.

## ISSUE

Under the circumstances presented, was the lien given by the divorce decree to the husband, on certain of the proceeds of the later sale of the house (which had been awarded to the wife), enforceable against a subsequent purchaser of the house who had no actual knowledge of the lien?

## DECISION

CONCLUSION. The lien attached only to the proceeds of the sale, and the purchaser, who paid cash for the property, was a bona fide purchaser for value and without notice of the lien and is therefore not liable to the lien claimant.

■ The provision of the divorce decree awarding the home to the wife as her sole and separate property is unambiguous. See footnote 1. The lien language in the decree did not purport to be a lien on the property, see footnote 2, and cannot be construed as such. *Seattle Brewing & Malting Co. v. Talley*, 59 Wash. 168, 169, 109 P. 600 (1910).

The lien given to the husband was on half of the proceeds of any sale by the wife, provided that (1) there was a sale, (2) the sales price was more than $14,250 and (3) the husband was living at the time of the sale. The husband's lien was by its terms limited to the *proceeds* of any such sale, if the home was ever sold. "*Proceeds of sale*" in this context means moneys actually received by the seller. *Long–Bell Lumber Co. v. National Bank of Commerce*, 35 Wn.2d 522, 536, 214 P.2d 183 (1950). *See* Black's Law Dictionary 1369 (4th ed. 1968).

■ A lien is binding on all persons who acquire property with notice of the lien or who have constructive notice of the lien by reason of its recordation, but unless otherwise

provided by statute, it is not binding on bona fide purchasers for value and without notice. 51 Am. Jur. 2d *Liens* § 14 (1970); 53 C.J.S. *Liens* § 13 (1948).

The purchaser had no actual notice of the lien. The decree creating the lien was never "recorded in the office of the recording officer of the county where the property is situated" as required by statute in order to give rise to a claim of constructive notice to the purchaser. RCW 65.08-.070. The purchaser was therefore a bona fide purchaser for value at the time he took title and he took title of the property free of any claim of lien. *See* RCW 65.08.070; *Perrin v. Derbyshire Scenic Acres Water Corp.*, 63 Wn.2d 716, 719, 388 P.2d 949 (1964); *McVean v. Coe,* 12 Wn. App. 738, 741–42, 532 P.2d 629 (1975).[3]

Affirmed.

FARRIS and WILLIAMS, JJ., concur.

Reconsideration denied May 31, 1979.

Review denied by Supreme Court September 7, 1979.

---

[3]The proceeds of the sale could have been levied on as personal property had the sales transaction been known to the husband. RCW 4.56.190. It should also be noted that under the Uniform Commercial Code, adopted subsequent to the entry of the divorce decree in this case, financing statements can be filed to protect proceeds on disposition of collateral. RCW 62A.9-306.