Argued December 6, 1978, affirmed as modified May 8, 1979

# FARMER'S FEED AND SUPPLY CO., INC.,
*Respondent,*
*v.*
# INDUSTRIAL LEASING CORPORATION,
*Appellant.*
## (No. 17-360, SC 25595)

594 P2d 397

Ridgway K. Foley, Jr., of Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, argued the cause for appellant. With him on the briefs was Clifford E. Nelson, Portland.

Norman Wapnick, of Sussman, Shank, Wapnick & Caplan, Portland, argued the cause for respondent. With him on the brief was Michael M. Moore, Forest Grove.

Before Denecke, Chief Justice, and Holman,* Howell, Bryson,* Lent and Linde, Justices.

HOWELL, J.

* Holman and Bryson, JJ., did not participate in this decision.

## HOWELL, J.

This is a suit by plaintiff, Farmer's Feed and Supply Co., Inc., to foreclose a lien for dairy feed sold. The defendant, Industrial Leasing Corporation (ILC), leased 325 head of dairy cows to defendant Hulbert between 1971 and August, 1974.[1] The plaintiff sold feed on open account to defendant Hulbert between May 17, 1971, and July 2, 1974. During that period approximately $70,000 worth of feed was delivered to Hulbert who paid plaintiff approximately $45,000 at various times. Plaintiff's notice of lien described the animals as 275 cows, the number that Hulbert told plaintiff were on the farm and listed names of the owners as ILC and Jack Hulbert.[2] The notice also recited that the materials were furnished between May 17, 1971, and July 2, 1974, and claimed a lien for $27,226.52. Shortly after plaintiff filed its lien, ILC took possession of 141 head of cows, removed them from the state, sold part of them, and re-leased the rest to a third party. The repossessed cows were valued at $500 per head.

Defendant's primary argument on appeal is that plaintiff's lien notice combined lienable and nonlienable items, thus rendering the entire lien void. Defendant argues that plaintiff's notice claimed a lien for $27,226 based on the sale of feed between May 17, 1971, and July 2, 1974. Prior to October 3, 1973, there was no statutory authority for a lien for a supplier of animal feed.[3] Defendant concludes that because the

---

[1] The defendant ILC is the only defendant which filed an appearance in the suit. Throughout this opinion we will refer to ILC as "defendant."

[2] The evidence showed that cows belonging to defendants Olson and Bernet were also on the Hulbert farm. Plaintiff settled with these two and recovered $3,725, and the judgment against ILC was reduced accordingly from $27,226.52 to $23,501.52.

[3] The statutory authority for plaintiff's lien was the result of amendments to ORS 87.294 by the 1973 Legislature, 1973 Or Laws ch 472, § 2. As amended, ORS 87.294 provided in relevant part:

"87.294. (1) Any person furnishing labor, service or materials to another upon any farmland, range, ranch or orchard to aid the growing

lien notice referred to feed delivered prior to October 3, 1973, as well as feed delivered after that date, plaintiff's entire lien must fail.

This court has held that where unsegregated lienable and nonlienable charges are lumped together in a lien notice so that extrinsic evidence is necessary to segregate them, the right to a lien is lost as to all such unsegregated items. *Hays v. Pigg,* 267 Or 143, 148, 515 P2d 924 (1973). In *Benj. Franklin S & L v. Hallmark,* 257 Or 436, 441, 479 P2d 740 (1971), we said the reason for this rule is that the owner of the encumbered property should be able to tell from the face of the lien as filed the amount of valid claims, so that he may discharge the property from the encumbrance without incurring the cost of foreclosure proceedings.

In our prior cases on this subject, the lien notices that have been held invalid have always included *charges* that were nonlienable. In the present case, plaintiff proved at trial that the amount it claimed in its lien notice included charges only for feed furnished after October 3, 1973, the effective date of ORS 87.294. Thus, the amount claimed in the lien notice did not include any nonlienable charges.

The question remains, however, whether we should hold plaintiff's lien void because it refers to nonlienable charges, even though no such charges are included in the amount claimed. Plaintiff claims that the reference in the lien notice to feed furnished prior to the effective date of the statute is "surplusage" and should not defeat the lien. It could be argued, however,

---

or harvesting of crops or the raising of livestock thereon shall have a lien upon such crops or animals. The lien shall be for the contract price for such labor, service or materials, or for the reasonable value thereof if there is no contract. The lien shall attach to the crop or animals from the date of commencement of the furnishing of labor, service or materials.

   " * * * * *."

The 1975 Legislature repealed these statutes and substituted a more comprehensive lien scheme. *See* 1975 Or Laws ch 648.

that by including a reference to nonlienable charges in the notice, plaintiff rendered the amount of the lienable debt uncertain, thereby preventing defendant from discharging the lien prior to trial.

■■ Whatever the logical appeal of this argument, we find we cannot adopt it in view of the language of ORS 87.295. That statute provides that the lien notice filed pursuant to ORS 87.295 must include (1) a true statement of the demand, (2) the name of the owner of the property to be charged, and (3) a description of the property to be charged. We interpret language requiring "a true statement of the demand" to mean that the lien notice must correctly state the amount demanded, not that it must correctly specify the source of the underlying obligation. *See Christman v. Salway et al*, 103 Or 666, 685, 205 P 541 (1922); *Chamberlain v. Hibbard*, 26 Or 428, 432, 38 P 437 (1894). The statute therefore entitles plaintiff to a lien so long as the amount claimed is accurate. Since the amount claimed in plaintiff's lien notice represents only lienable charges, plaintiff's lien is not void.

The defendant next argues that if plaintiff's lien is valid, it should be reduced from $27,226.52 to $22,749.20, because that is the amount shown on plaintiff's ledger records as of July 2, 1974. At trial, plaintiff introduced ledger sheets relating to Hulbert's account that showed a balance owing on July 2, 1974, of $22,749.20. Plaintiff's president, Myron Ray, testified that the ledger was prepared under his supervision, that the entries were made at the time each sale and payment occurred, and that the entries were supported by invoices in his possession.

Plaintiff argues that "[t]he ledger card is only one part of plaintiff's proof with respect to the amount owing." Plaintiff notes that Mr. Ray testified that the amount owing was $27,226.52, and that it introduced a handwritten memo prepared by Mr. Ray showing the same amount owing. Plaintiff also notes that the figure $27,226.52 has been written in the upper right-hand corner of the ledger sheet.

■ Upon de novo review of this evidence, we conclude that plaintiff's proof was sufficient to show a debt of only $22,749.20.[4] Plaintiff's own president testified that the ledger sheet was the regular business record relating to Hulbert's account. Although he also testified that his handwritten memo was a "recapitulation" of the ledger sheet, he offered no explanation as to why the amount listed on his memo was greater than the amount listed on the ledger. Nor was there any explanation as to why the larger figure was handwritten on the ledger sheet.

■ The plaintiff's lien, however, does not fail because of the difference in the two amounts. The fact that a notice of lien claims as due a larger amount than that found by the court will not destroy a lien for the amount actually due absent a showing of fraud or "gross and palpable" negligence sufficient to raise a presumption of fraud. *J. W. Copeland Yards v. Phillips,* 275 Or 193, 550 P2d 438 (1976). There is absolutely nothing in this record that demonstrates fraud or the kind of flagrant negligence we found in *Copeland Yards.*

■ Defendant next contends that plaintiff's lien notice failed to adequately describe the collateral. ORS 87.295 required that the lien notice contain "a description of the crop or animals to be charged with the lien and the description of the land upon which they were grown, sufficient for identification." Plaintiff's lien notice described the collateral as "275 cows upon the following described farm * * *" and then included a description of Hulbert's farm. Plaintiff, not unnaturally, did not know the exact number of cows on Hulbert's farm but relied on a figure given it by Hulbert. Defendant concedes in its brief that it leased 325 head of cows to Hulbert between 1971 and 1975. We hold that the description in plaintiff's lien notice was

---

[4] As indicated in note 2, supra, plaintiff has already recovered $3,725 from two other defendants. The judgment in this case must therefore be reduced to $19,024.20.

sufficient to give it a lien on the 141 cows repossessed by defendant.

The defendant also contends that plaintiff "sued in equity to foreclose a faulty lien" and plaintiff cannot therefore recover a money judgment.

As previously noted, during the trial it appeared that defendant ILC had removed the cows from the jurisdiction of the court, after plaintiff's lien had been filed, and sold or re-leased them to a third party in the state of Washington. The defendant's actions in removing the cows from the state would have the effect of preventing plaintiff from foreclosing its lien and recovering the sums due plaintiff. Where the owner of lien-subject property wrongfully disposes of it, the proceeds stand in the place of the property sold. In such cases, where equity jurisdiction attaches, the court will dispose of the entire controversy and render a money judgment. *Division of Labor v. Siskiyou Mills,* 40 Cal Rptr 111, 229 Cal App 2d 105 (1964); *Continental Supply Co. v. White,* 92 Mont 254, 12 P2d 569 (1932).

Defendant's final argument, which it raises for the first time on appeal, is that the lien could not be binding on defendant absent a contractual relationship and that, in any event, the lien could only attach to Hulbert's leasehold interest. We consider these arguments to be inconsistent with the language of ORS 87.294(1):

"Any person furnishing labor, service or materials to another upon any farmland * * * to aid * * * the raising of livestock thereon *shall have a lien upon such * * * animals."* (Emphasis added.)

Nowhere in ORS 87.294 or the other provisions of the Farm Labor Lien Law is there any requirement that there be a contractual relationship between the lienor and a third party for the lien to be binding on the third party. Nor does the statute limit the effect of the lien to the interest of the person in possession of the animals. The statute simply states that the person

furnishing feed "shall have a lien upon such * * * animals."

Had the legislature intended to limit the effect of a lien authorized by ORS 87.294 to the interest of the party in possession, it could have done so by qualifying the statutory language. The fact that it did not may simply mean it did not anticipate arrangements such as the one in the present case.[5] However, we think there are good reasons for holding that a lien for the furnishing of feed should be binding on a lessor of farm animals even if he is not a party to the contract for sale of such feed. The furnishing of adequate feed protects the lessor's interest in the cattle leased. Moreover, in many cases there will be no way for a feed supplier to determine whether the true owner of the cattle is a party other than the one in possession. Finally, we think that anyone who, like defendant, owns several hundred head of dairy cattle and leases them to a third party must anticipate that someone is supplying feed for the cattle and that the supplier expects to be paid.

We hold that the lien created by plaintiff in this case was binding on defendant whether or not defendant had a contractual relationship with plaintiff. We also hold that the lien attached to defendant's as well as lessee's interest in the collateral.[6] It follows that the judgment of the trial court must be affirmed, except

[5] This appears to be a likely explanation in view of the fact that the legislature enacted ORS 87.300 to govern the rights of secured creditors and lessors of the premises, but said nothing with respect to lessors of the animals.

[6] Defendant relies on ORS 87.015, which it contends is applicable under the terms of ORS 87.310. We believe defendant's reliance on these statutes is misplaced. We read ORS 87.310 as making applicable to liens created by ORS 87.294 only the procedures for foreclosure and sale that govern ORS 87.010. The legislature did not provide for procedures to govern foreclosure of liens created by ORS 87.294 in the section relating to those liens, but enacted ORS 87.310 so that procedures would be available for foreclosure and sale under liens created by ORS 87.294.

that the judgment is modified to reduce the amount in accordance with plaintiff's proof at trial.[7]

Affirmed as modified.

---

[7] *See* note 4, *supra.*