Argued and submitted May 4, affirmed as modified August 4,
petition for rehearing denied September 9, 1981

## The McGREGOR COMPANY,
*Respondent,*

*v.*

## HERITAGE, dba Heritage Farms, Inc. et al,
*Defendants,*
## OREGON POTATO, INC. et al,
*Respondents,*
## DUNN,
*Petitioner.*

## (NO E 21,987, CA 15357, SC 27536)

631 P2d 1355

Milo Pope, Mt. Vernon, argued the cause for respondent The McGregor Company. With him on the briefs were Joseph N. Hershberger, Hermiston, and Kilpatricks & Pope, Mt. Vernon.

Leeroy O. Ehlers, Pendleton, argued the cause and filed the briefs for respondents Oregon Potato, Inc., and Brewer Farms, Inc.

No appearance for respondent 3-D Sales, Inc.

Garry L. Reynolds, Hermiston, argued the cause for petitioner. With him on the brief was Morrison & Reynolds, Hermiston.

TONGUE, J.

Denecke, C.J., dissented and filed opinion in which Peterson and Tanzer, JJ., joined.

Peterson, J., concurred in part and dissented in part and filed opinion.

## TONGUE, J.

This is a suit to foreclose three agricultural services liens under ORS 87.226 against the proceeds of a potato crop grown by Heritage Farms, Inc. Some of the other defendants filed counterclaims to foreclose liens claimed by them. The trial court ruled, among other things, that: (1) plaintiff's liens were invalid; (2) defendant Oregon Potato, Inc. (OPI) had a valid possessory lien for $126,124.77, and (3) defendant 3-D Sales had a valid agricultural services lien for $12,567, and that the interest of defendant Dunn was subordinate to all other liens. Plaintiff appealed to the Court of Appeals, contending that its lien was valid. Defendant Dunn cross-appealed, contending that defendant OPI's possessory lien was lost by transferring it to a third party and that defendant 3-D Sales' lien did not attach to the proceeds of the crop.

The Court of Appeals held that: (1) plaintiff's liens were valid, (2) defendant OPI's lien was not lost by its transfer, and (3) defendant 3-D Sales' lien attached to the proceeds of the crop. 49 Or App 489, 620 P2d 488 (1980). Defendant Dunn filed a petition for review, contending that the Court of Appeals erred in these holdings. We allowed that petition.

Because the facts are not in controversy and are well stated in the opinion by the Court of Appeals, there is no need to restate them, except as they may be pertinent to the disposition of each of the three questions presented by the petition for review.

## A. Plaintiff's agricultural services liens were valid.

Defendant Dunn contends that plaintiff's agricultural services liens were invalid because ORS 87.242 (2)(b) provides that the notice of the lien must contain "the name of the owner of the chattel to be charged with the lien; * * *" and that this requirement was not satisfied because the notice named John Heritage as the owner of the chattels, whereas the true and actual owner was Heritage Farms, Inc., a corporation. In support of that contention defendant Dunn cites our decision in *Timber Structures v. C.W.S.G. Wks.*, 191 Or 231, 229 P2d 623 (1951), in which we said (at 246) in referring to a lien statute that:

"The statute is strictly construed as to persons entitled to its benefits and as to the procedure necessary to perfect the lien; but when the claimant's right has been clearly established, the law will be liberally interpreted toward accomplishing the purposes of its enactment."

Defendant Dunn also contends that the Court of Appeals, in holding that plaintiff substantially complied with the statute in naming the owner "in the manner given" ignored the plain words of the statute and that the filing of a lien against an individual "does not put a third party on notice that the liens are against the property of the corporation unless the corporation is named."

■     We agree with the well-reasoned opinion by the Court of Appeals in holding that plaintiff had complied substantially with the requirements of the statute and that its liens were valid under the facts of this case and for the reasons stated in that opinion. We would only add a few additional comments in view of the contentions now made by the petitioner.

*Timber Structures,* cited by defendant Dunn, involved a mechanics' or materialman's lien statute (now ORS 87.010). In other decisions under that statute, while recognizing the rule as stated in *Timber Structures,* we have nevertheless held that a showing of substantial compliance with requirements of the statute is sufficient. *See, e.g., Lemire v. McCollum,* 246 Or 418, 427, 425 P2d 755 (1967), citing other cases to the same effect, including *Timber Structures.* The same rule has also been applied to other statutory liens. *See, e.g., Lambert v. Stupek,* 237 Or 498, 501, 392 P2d 255 (1964), citing other cases to the same effect. See also our recent decision in *Steel Products Company of Oregon, Inc. v. Portland General Electric Company et al,* 291 Or 41, 628 P2d 1180 (1981). As noted by the Court of Appeals (49 Or App at 495-96), this rule of substantial compliance has been applied by the court to sustain the validity of liens in various types of cases.[1]

---

[1] Defendant Dunn also contends that the requirement for naming the owner of an agricultural service lien is more strict than for a mechanics' lien, because the notice provision of the mechanics' lien statute (ORS 87.035(2)) requires only that the "owner or reputed owner" be named, while the notice provision of the agricultural service lien notice statute (ORS 87.242(2)) requires that the "owner" be named.

■     We have found no previous decision by this court which undertakes to define the term "substantial compliance" as applied in lien cases or to hold what elements are of importance in deciding whether there has been "substantial compliance" in such cases. The Indiana Court of Appeals recently considered this problem in *Beneficial Finance Co. v. Wegmiller Bender Lbr. Co.,* ___ Ind App ___, 402 NE 2d 41 (1980), a case in which a lien filed on property owned jointly by husband and wife omitted the name of the wife. In holding that the lien substantially complied with the statute even though the wife's name was omitted, the court said (at 45):

> "[W]hether there has been substantial compliance by the lien claimant depends upon the degree of non-compliance with the letter of the statute, the policy which underlies the particular statutory provision in question, and the prejudice which may have resulted to either the owner of the property or other third parties who have an interest in the real estate. We find there was substantial compliance * * * in the present case."

This is consistent with previous decisions by this court in which we have recognized that lack of prejudice is a proper factor for consideration in such cases. *See Mercer Steel v. Park Construction Co.,* 242 Or 596, 600, 411 P2d 262 (1966), and *Drake Lumber Co. v. Paget Mortgage Co.,* 203 Or 66, 80-81, 274 P2d 804 (1955).

Defendant Dunn contends in this case that the filing of a lien against an individual does not put a third party on notice that the liens are against property of a corporation unless it is named as the owner. Plaintiff's first claim of lien named "Heritage Farms, c/o John Heritage" and the remaining two named "John Heritage doing business as Heritage Farms." We believe that under the facts of this case these lien notices were sufficient to give adequate notice to third persons, despite these discrepancies. The

---

However, the rule of substantial compliance has been applied by this court not only in mechanics' lien cases, but also in cases involving other statutory liens. *See Lambert v. Stupek,* 237 Or 498, 501, 392 P2d 255 (1964); *Pearcy v. Col. Growers & Pac. Corp.,* 173 Or 1, 6, 143 P2d 913 (1943); *Craig v. Crystal Realty Co.,* 89 Or 25, 33, 173 P 322 (1918).

corporation, whose only directors were John Heritage and his wife, does not contest the validity of the liens. Also, defendant Dunn does not question the further statement by the Court of Appeals (49 Or App at 496) that all parties concede that they knew of plaintiff's liens and that there is no claim of prejudice in this case.

Under these facts and for these reasons we agree with the holding by the Court of Appeals that plaintiff's liens were valid.

## B. Defendant OPI's lien was not lost by its "transfer."

Defendant Dunn contends that defendant OPI's claim of a common law factor's lien in the sum of $126,124.77 for harvesting, scaling, hauling, processing, packing and selling the potato crop was lost by the assignment of that lien to defendant Brewer Farms, Inc.[2] In support of that contention, defendant Dunn, while recognizing that this is a question of first impression in Oregon, cites the decision by this court in *Yellow Mfg. Accept. Corp. v. Bristol,* 193 Or 24, 236 P2d 939 (1951), and the rule as stated in 53 CJS Liens § 17d(3) (1948).[3] Thus, it is contended that the rule should be, as stated in CJS, that although such a lien may be assignable to another without loss of possessory rights against the lien debtor, such an assignment destroys the lien as to third parties.

Again, we agree with the well-reasoned opinion by the Court of Appeals in holding that under the facts of this

---

[2] The petition for review does not challenge the holding by the Court of Appeals, sustaining defendant OPI's claim of a common law factor's lien, but contends that such a lien is not assignable. None of the parties on appeal raised the question whether Dunn, as assignee of the Pendleton Banking Company security agreement, had standing or right to object to the "transfer" of the OPI lien.

[3] The rule as stated in 53 CJS Liens, § 17d(3) (1948) is as follows:

"As a general rule a common-law or other lien dependent on possession is waived or lost by the lienholder voluntarily and unconditionally parting with possession or control of the property to which it attaches; and such lien cannot be restored thereafter by resumption of possession. The lien is not waived or destroyed, however, *except as to third persons,* where there is an intention to preserve the lien, the lienholder only conditionally parting with the property, as where * * * *he delivers it to an agent, servant, or trustee to hold for his benefit and subject to his lien;* * * *." (Emphasis added by petitioner)

case defendant OPI's possessory factors lien was not lost by its assignment to defendant Brewer Farms, Inc., but that the lien was still valid as against defendant Dunn for the reasons stated in that opinion. And, again, we would only add a few additional comments in view of contentions now made by petitioner.

First of all, our decision in *Yellow Mfg. Accept. Corp.* was properly distinguished by the Court of Appeals (49 Or App at 502) in that there the claimant of the lien returned the collateral to the debtor, whereas in this case at the same time that the claim was assigned, the security in the possession of the assignor was transferred to the assignee along with it and was not returned to the debtor. In addition, the funds derived from the sale of the crop were kept intact and placed on deposit and all claimants were notified where they were deposited.

As for reliance by defendant Dunn upon the rule as stated in CJS, we prefer the reasoning of the Court of Appeals (49 Or App 502) which, although recognizing that there is a split of authority in other jurisdictions, adopted in substance, as applied to the facts of this case, the rule as stated in Restatement of Security, § 67(1) (1941):

> "Subject to the terms of the bailment where a claim, except that of an attorney, secured by a possessory lien is effectively assigned and the assignee as an incident of the assignment obtains possession of the chattel or the assignor or a third person has possession for him, the lien also is effectively assigned."[4]

We also agree with the observation by the Court of Appeals (49 Or App 502-503) to the effect that although there may be circumstances under which such an assignment would create prejudice either to the debtor or to other lien claimants, in this case neither the debtor nor other lien claimants contend that they have been prejudiced by the assignment.

Under these facts we agree with the holding by the Court of Appeals that the OPI's factors lien was not lost by

---

[4] Accord: Brown on Personal Property 450 § 14.2 (3rd ed 1975). *See also Brice Mortgage Co. v. Wodtke et al,* 215 Or 192, 194, 332 P2d 1044 (1958), holding that a mechanic's and materialman's lien becomes assignable after the lien has been perfected by filing the required notice.

the assignment of that claim, together with a transfer of possession of the funds, to Brewer Farms, Inc.

## C.  The agricultural services lien of 3-D Sales, Inc., did not extend to the proceeds of the sale of the potato crop.

We do not, however, agree with the holding by the Court of Appeals that under the facts of this case the agricultural services lien of defendant 3-D Sales, Inc. in the sum of $12,567 extended to the proceeds of the sale of the potato crop.

ORS 87.236(2) provides:

"The liens created by ORS 87.226 and 87.232 shall also attach to the proceeds of the sale of the chattels subject to those liens if:

"(a)  Prior to the filing of the notice of claim of lien, the chattels or any part thereof are sold or delivered to an agent, broker, cooperative agency or other person to be sold or otherwise disposed of; and

"(b)  At the time the purchaser, agent, broker, cooperative agency or other person is notified of the filing of the claim of lien by delivery to him of a true copy thereof, the proceeds that were received or will be received from the sale or other disposal of the chattels have not been delivered to the owner of the chattels."

In this case the potato crop was not sold "prior to the filing of the notice of claim of lien," as provided by subsection (a). Instead, it was *after* the filing of the notice of the claim of lien that the crop was sold.

It is contended by the petition for review that the Court of Appeals erred in its holding that the lien of defendant 3-D Sales extended to the proceeds of the sale of the potato crop by defendant OPI because (1) although 3-D Sales had a valid lien on the crop which entitled it to follow the crop and foreclose upon it even after delivery to OPI for its sale, it does not follow that 3-D Sales had a right to the proceeds of the crop unless it complied with the requirements of ORS 87.236(2); (2) this court specifically held in *Paulk v. Van Cleve et al,* 210 Or 218, 223, 309 P2d 176 (1957), that such a lien attaches to the proceeds only if the crop is sold or possession is delivered prior to the filing of the lien, and that the court "cannot judicially expunge that explicit requirement from the statute," and (3) that this is

purely a statutory lien and that 3-D Sales "must bring itself within the provisions of ORS 87.236 for its lien to attach to the proceeds," which it has not done.

Unfortunately, defendant 3-D Sales did not appear or file a brief in either this court or in the Court of Appeals. We have, however, examined the memorandum filed by it in the trial court. In that memorandum it was contended by defendant 3-D Sales, without citation of cases or authorities other than the provisions of the statute, that (1) because it had a valid lien under the statute *on the crop* before its delivery to OPI and because OPI took possession of the crop with notice of the lien and subject to the lien, it was not necessary for 3-D Sales to "take further steps to perfect their lien claim or to have OPI honor the lien"; (2) that to hold to the contrary would defeat the purpose of the statute because such a lien would be worthless in that it could be avoided by delivery of possession of a crop to a third person for sale; (3) it was impossible for defendant 3-D Sales to comply with ORS 87.236 because its lien had already attached *before* delivery of the crop to OPI; and (4) the requirements of ORS 87.236 need be followed only when the lien is not filed before delivery of the crop to a third person for sale.

The Court of Appeals agreed, in effect, with these contentions by its holding that:

"Under ORS 87.242, 3-D Sales was required to file its lien claim 'not later than 60 days after the close of furnishing * * *' of the seed potatoes. Having done so, it had a perfected agricultural services lien under ORS 87.226, and anyone purchasing the potato crop took it subject to that lien. As we read ORS 87.236, it provides for the situation where the crop is sold or delivered to an agent or broker prior to the timely filing of the claim of lien, in which case the sale or delivery would be free of the lien but for that section, which permits the subsequent, but timely, filing to be effective against the proceeds by giving the notice required by ORS 87.236(2)(b). In other words, it provides a shuttle service for those who failed to board the vessel before it left the dock." 49 Or App at 497-98.

The fallacy of this reasoning is its assumption that because, upon perfecting an agricultural services lien under ORS 87.226, that lien extends to "anyone purchasing

the potato *crop,"* it also follows that the lien attaches to the *proceeds* of the sale of the crop.

■    Generally speaking, there are three kinds of liens: (1) Common Law liens, (2) Equitable liens, and (3) Statutory liens. 51 Am Jur 2d Liens § 1 (1971). It has been held that some common law or equitable liens extend to the proceeds of the sale of the security.[5] Mortgages, trust deeds and security agreements may also result in rights sometimes referred to as "liens," and it has been held that the "liens" under such agreements may also extend to the proceeds of the sale of the security.[6]

We also find cases in which courts have held that common law and equitable liens, as well as "liens" under mortgages and other types of security agreements, may extend to the proceeds of the sale of the security[7] when the security has been wrongfully converted or sold to a bona fide purchaser so as to destroy the lien upon the security or make it impossible to enforce the lien against the security.[8] Thus, in *Farmer's Feed v. Industrial Leasing,* 286 Or 311, 594 P2d 397 (1979), also involving a lien under ORS 87.226, this court held that when, after a lien has been perfected, the chattels are *wrongfully converted,* and "where equity jurisdiction attaches, the proceeds stand in the place of the property sold" (286 Or at 317), as in the case of a constructive or resulting trust.[9] In such a case, however, the chattels are no longer available. We find no authority, however (and none has been cited to us), to support a rule to the effect that when, as in this case, the goods subject to a lien

---

[5] *See Kshenky v. Pioneer Nat. Title Ins. Co.,* 22 Wash App 817, 592 P2d 667, 669 (1979).

[6] *See Ex Parte Morton,* 261 Ala 581, 75 So 2d 500, 509 (1959); *Cole-McIntyre-Norfleet Co. v. DuBard,* 135 Miss 20, 99 So 474 (1924); *Price v. Universal CIT Credit Corporation,* 102 Ariz 227, 427 P2d 919 (1964).

[7] See footnotes 5 and 6.

[8] See 51 Am Jur 2d 190, Liens § 60, and 53 CJS 859, Liens § 12, and cases cited therein.

[9] *See Ex Parte Morton,* 261 Ala 581, 75 So 2d 500 (1954); *Division of Labor Law Enforcement v. Siskiyou Mills,* 229 Cal App 2d 105, 40 Cal Rptr 111 (1964); *Ellett v. Tyler,* 41 Ill 449 (1866); *Holland v. Farrier,* 75 Ind App 368, 130 NE 823 (1921); *Bolivar County v. Bk. of Cleveland,* 170 Miss 555, 155 So 176 (1934); 76 Am Jur 2d Trusts, § 249 p. 470 (1975).

created by statute which provides for a lien against the goods are not wrongfully converted or sold to a bona fide purchaser, but are sold or delivered to a third party who has notice of the lien, the lien holder can nevertheless enforce such a statutory lien against the proceeds of the goods, rather than foreclose it against the goods themselves, in the absence of statutory provisions to that effect.

Indeed, it has been stated in 51 Am Jur 2d 190, Liens, § 60 that:

"* * * if the lien is not destroyed by the transaction, the lienor has no right to the proceeds, and a lien may be enforced against the property subject to the lien without resorting to the proceeds of a sale if no lien has been obtained against the proceeds."

In order for the holder of a statutory lien to claim the benefit of the rule that if the security has been wrongfully converted or sold to a bona fide purchaser in such a manner as to destroy the lien or otherwise make it impossible to enforce the lien against the security, so as to entitle him to enforce the lien against the proceeds of the crop on a theory of a constructive trust, it would seem that the holder of such a lien would have the burden to plead and prove that the wrongful conversion or sale took place without his knowledge and before he was able to enforce his lien against the security.[10]

No such pleading or proof was offered by defendant 3-D Sales in this case and no such contention is made by it. Indeed, no contention is made that 3-D Sales did not know of the delivery of the potatoes to OPI. Instead, the contention by 3-D Sales, as stated in its trial court memorandum, was that it had a valid lien under the statute on the *crop* before its delivery to OPI for sale and, because OPI took possession of the crop with notice of that lien and subject to it, it was not necessary for 3-D Sales to "take further steps to perfect its lien or to have OPI honor the lien."

We disagree and hold that defendant 3-D Sales has not sustained its burden to prove that its lien was either destroyed or that it was impossible to enforce against the crop because of the delivery of the crop to OPI for sale and

[10] *See Hanscom v. Irwin,* 186 Or 541, 208 P2d 330 (1949); 90 CJS Trusts, § 460(d) p. 905 (1955).

the sale of the crop by OPI without the knowledge of 3-D Sales and before it was able to enforce its lien against the crop. It follows that 3-D Sales is not entitled to enforce its lien against the proceeds of the crop unless it was entitled to enforce its lien against such proceeds by reason of the provisions of the statute, aside from the rule relating to wrongful conversion or sale of goods subject to a lien.

An "agricultural services lien" is not a common law lien or an equitable lien, but is purely the creature of statute, ORS 87.226(1), which provides for a lien "*upon the crops or animals* for the reasonable or agreed charges for * * * labor, materials or services." To the same effect, ORS 87.236(1) provides that "the liens created by ORS 87.216 to 87.232 attach to the *chattels* described in those sections." Although such a lien, when properly perfected, may follow the *crop* upon its delivery or sale to a third person, such a lien would not normally attach to the *proceeds* of the sale of the crop in the absence of some statutory provisions so extending the application of the lien.

The only statutory provisions extending the application of the "agricultural services lien" to the *proceeds* of the sale of crops subject to such a lien are those set forth in ORS 87.236(2), as previously quoted. ORS 87.236(2) provides that "The liens *created by* ORS 87.226 and 87.232 shall also attach to the *proceeds* of the sale of the chattels subject to those liens *if* " the chattels were sold or delivered "*prior to the filing of the notice of the claim of lien*" and if at the time the purchaser is notified of the filing of the lien the proceeds from the sale "have not been delivered to the owner of the chattels." In other words, if *after* the lien has been perfected by the filing of the lien notice, chattels are sold or delivered to a third person who has notice of the lien, as in this case, the statutory scheme appears to be that the remedy of the lien holder is to follow the chattels and enforce the lien against them.

These conditions may or may not be unreasonable, but they are conditions imposed by the legislature as conditions which must be satisfied in order for the liens "created by ORS 87.226" to extend to the proceeds from the sale of agricultural crops subject to that lien.

In *Paulk v. Van Cleve et al*, 210 Or 218, 309 P2d 176 (1957), this court considered what was then ORS 87.290(2), the predecessor of ORS 87.236, which imposed similar conditions upon the application of an agricultural services lien to the proceeds of a crop. Although the facts of that case were somewhat different (as pointed out by the Court of Appeals, 49 Or App at 498), this court held (at 223-225) that:

> "A lien may attach to *proceeds* only if the crop is sold prior to the filing of the lien or 'possession delivered,' etc. as provided * * *"

that:

> "* * * Only under the conditions specified in ORS 87.290(2) can a lien on proceeds be acquired * * *"

and that "[w]e cannot judicially expunge" the "explicit requirement from the statute."

This holding is in accord with previous decisions under other lien statutes in *Phillips v. Graves*, 139 Or 336, 343, 9 P2d 490 (1932), and *Gordon v. Deal*, 23 Or 153, 155, 31 P 287 (1892). Also, there is no claim in this case of substantial compliance with the conditions imposed by ORS 87.236(2).

As previously noted, the statute involved in *Paulk* was ORS 87.290(2), the predecessor of ORS 87.236(2), which was enacted in 1975 (1975 Or Laws c. 648 § 20). We have examined the legislative history of the 1975 statute, including the minutes of the legislative committee which considered it (see, e.g., Minutes, House Judiciary Committee, February 19, 1975, and March 24, 1975), and find nothing to indicate a legislative intent other than an intent to require compliance with the conditions provided by ORS 87.236(2) in order for the lien "created by" ORS 87.226 to extend to the proceeds of the sale of agricultural crops. According to Minutes, House Judiciary Committee, February 19, 1975, pp 4-5, with reference to Section 20 of H.B. 2335 (now ORS 87.236(2):

> "Section 20 retains 87.294 which allows liens created by certain statutory liens to attach to the proceeds of the sale *if certain conditions are met.* Language has been changed somewhat, but *the intent was for no substantive change.* "(Emphasis added)

For these reasons we hold that although defendant 3-D Sales had perfected a lien under the terms of ORS 87.226 in the sum of $12,567 against the crop of potatoes and was entitled to enforce that lien against that crop upon delivery of the crop to defendant OPI for sale, the Court of Appeals was in error in its holding to the effect that under the terms of that statute the lien of 3-D Sales, Inc. also extended to the proceeds of the sale of the potato crop under the facts of this case. With this exception, we affirm the decision by the Court of Appeals in remanding this case for the entry of a new decree consistent with its opinion.

We wish to make it clear, however, that even though ORS 87.236 does not by its terms provide for recovery against the proceeds of a crop under facts such as those presented by this case, we do not foreclose the possibility that the lien on the crop could be enforced against the proceeds of the crop upon such a proper showing by pleading and proof as would justify that result in the exercise of the power of a court of equity. *See, e.g., Farmer's Feed v. Industrial Leasing, supra.*

Affirmed as modified.

**DENECKE, C. J.,** dissenting.

I concur in the majority decision except for that portion disallowing 3-D Sales, Inc.'s lien on the proceeds.

In February 1978 the defendant 3-D Sales, Inc., which is located in Walhalla, North Dakota, furnished seed potatoes to Heritage Farms. Within 60 days after furnishing the seed potatoes, 3-D Sales filed a notice of claim of lien. The crop was harvested in the second week of August 1978 and sold to OPI, the agent for Heritage, who, in turn, immediately sold and shipped the potatoes to various out-of-state purchasers and OPI retained the proceeds. In this proceeding 3-D Sales claims a lien on the proceeds. The defendant Dunn contends 3-D Sales has no right to a lien on the proceeds because it did not file a notice of claim of lien after the crop was sold or delivered to OPI.

ORS 87.236(2) provides:

"The liens created by ORS 87.226 and 87.232 shall also attach to the proceeds of the sale of the chattels subject to those liens if:

"(a) Prior to the filing of the notice of claim of lien, the chattels or any part thereof are sold or delivered to an agent, broker, cooperative agency or other person to be sold or otherwise disposed of; and

"(b) At the time the purchaser, agent, broker, cooperative agency or other person is notified of the filing of the claim of lien by delivery to him of a true copy thereof, the proceeds that were received or will be received from the sale or other disposal of the chattels have not been delivered to the owner of the chattels."

As the defendant Dunn points out, the court stated in *Paulk v. Van Cleve,* 210 Or 218, 223, 309 P2d 176 (1957):

"A lien may attach to *proceeds* only if the crop is sold prior to the filing of the lien or 'possession delivered', etc. as provided * * *."

However, as the Court of Appeals observed in the opinion in the present case, the facts in *Paulk* were different, and it could not be determined when the notice of claim of lien was filed or that the party claimed the lien ever gave notice to the defendant. In any event, I am of the opinion that the purpose of the above-quoted statute was to extend the lien holder's rights, not restrict them, and that the statement in *Paulk* is incorrect.

If the defendant is correct in his contention, persons performing labor, supplying material or providing services which necessarily have to be done more than 60 days before the crop would be ready to sell or be delivered could never claim a lien on the proceeds. In the present case the crop was sold or delivered to OPI at least 150 days after the seed was furnished to Heritage. ORS 87.242 provides that the notice of claim of lien must be filed "not later than 60 days after the close of the furnishing of the labor, services or materials." In this case, if 3-D Sales had waited until after the crop had been sold or delivered to OPI to file its notice of claim of lien, the filing would have been ineffective as not timely.

The lien asserted is a statutory lien and its existence, its extent and certain other incidents of it are controlled by statute. However, the Oregon statutes creating statutory liens do not purport to govern all the incidents of the liens. For example, the statutes do not provide answers

for most issues of lien priority or the rights of bona fide purchasers for value of property on which the lienholder claims a lien. In the absence of an applicable statute, the rules of equity govern the incidents of statutory liens. Liens are subjects of equitable jurisdiction.

"And it is now generally recognized that it is the peculiar province of a court of equity to protect liens." *Platte County State Bank v. Frantz,* 239 P 531, 534 (Wyo. 1925).

"* * * Equity courts have general jurisdiction to adjust priorities among conflicting liens when the parties are before the court." *East Gadsden Bank v. Bagwell,* 143 So 2d 438, 440 (Ala 1962).

In equity when goods subject to a lien have been sold and the lien cannot be foreclosed on the goods, the proceeds of the sale, if available, are subject to a lien.

"The nature of suit here pursued is available to a lienholder whose lien was destroyed by defendant while in possession of the property with the legal title or holding under it and who sold without authority and received value for it. Having the possession supported by the legal title, and plaintiff having a lien, defendant was in the status of a trustee holding for the benefit of plaintiff to the extent of his interest. And when such a person sells the property and destroys plaintiff's lien and receives value for it, the lien attaches to such value and the trust is transferred to it. * * *" *Ex Parte Morton,* 261 Ala 581, 75 So 2d 500, 509 (1954).

"It is true that where a chattel (here an automobile) is sold in the ordinary course of trade so as to destroy a lien on it, the lien will, under certain conditions, attach to the proceeds of the sale (here the conditional sales contract). Whether the conditions were met in the instant case need not be decided, since the lien — if any attached — is merely an equitable lien which, though valid against certain persons, would not follow the conditional sales contract into the hands of a bona fide purchaser such as CIT in the instant case." *Price v. Universal C.I.T. Credit Corporation,* 102 Ariz 227, 427 P2d 919 (1964).

The rules of equity govern the incidents of statutory liens not governed by statute when the lien is sought to be enforced by foreclosure as foreclosure is an equitable remedy. This was the reasoning in *Farmer's Feed v. Industrial Leasing,* 286 Or 311, 594 P2d 397 (1979). There we interpreted the agricultural lien statute in effect at that

time which has the same provision with which we are now concerned. The facts were that Industrial Leasing Company leased cows to Hulbert. Hulbert bought feed from plaintiff which timely filed a notice of lien. Thereafter, the leasing corporation took possession of the cows and sold them. We held:

> "As previously noted, during the trial it appeared that defendant ILC had removed the cows from the jurisdiction of the court, after plaintiff's lien had been filed, and sold or released them to a third party in the state of Washington. The defendant's actions in removing the cows from the state would have the effect of preventing plaintiff from foreclosing its lien and recovering the sums due plaintiff. Where the owner of lien-subject property wrongfully disposes of it, the proceeds stand in the place of the property sold. In such cases, where equity jurisdiction attaches, the court will dispose of the entire controversy and render a money judgment." *Farmer's Feed v. Industrial Leasing,* 286 Or 311, 317, 594 P2d 397 (1979).

We thus held that an agricultural lien can be imposed on the proceeds of the sale of the animals on which the lien was claimed although the claim of notice of lien was filed before the cows were sold.

On the other hand, the rule of equity is clear:

> "A lien is binding on all persons who acquire property with notice of the lien by reason of its recordation, but unless otherwise provided by statute, it is not binding on bona fide purchasers for value and without notice. * * *" *Kshensky v. Pioneer Nat. Title Ins. Co.,* 22 Wash App 817, 592 P2d 667, 669 (1979).

Except for ORS 87.236(2), a person claiming a lien who did not file the notice of claim of lien before the sale by Heritage to OPI would not have a lien.

I am of the opinion that the most reasonable interpretation of the statutory scheme for agricultural liens is as follows: The statute is silent on whether a lienholder who timely filed a notice of lien before the crop was sold or delivered can impress the lien on the proceeds held by the buyer. The reason the statute is silent is because the usual rules of equity provide that the lienholder can reach the proceeds of the sale of property on which a lien is claimed if the creditor can no longer satisfy its claim out of the liened property. Under the usual rules of equity, however, one

seeking a lien cannot have a lien either on the property or the proceeds of the sale of the property if notice of lien was not filed before the sale of the property. ORS 87.236(2), however, has enlarged the rights of one seeking a lien under these circumstances. It provides the lienholder can have a lien on the proceeds of the sale if the purchaser, agent, broker, etc., is notified of the filing of the claim of lien which has been filed after the sale or delivery and the proceeds have not been delivered to the owner of the crops. Under these circumstances, the purchaser or agent is protected even though it had no notice of the lien at the time it purchased or took delivery of the crop, and the party claiming a lien is able to apply the security, the lien, in payment of the debt.

The majority concur that pursuant to the rules of equity under some circumstances a lienholder can enforce a lien against the proceeds of a sale of the liened property. The majority is of the opinion, however, that 3-D Sales cannot have a lien against the proceeds in this case because it did not plead or prove that its lien had been destroyed such as by wrongful conversion of the potatoes or by a sale to a bona fide purchaser.

3-D Sales had no occasion to plead that its lien on the potatoes had been destroyed. Neither Roy Dunn, who is now asserting that 3-D Sales cannot claim a lien on the proceeds, nor its assignor, made this assertion in the pleadings. Their contention in the pleadings was that Dunn's assignor's lien had priority over the other liens.

The proof was that within a week after harvesting the potatoes OPI commenced shipping them to buyers all over the United States. The invoices contained no information on who grew the potatoes or where they were grown. Most of the invoices and shipments commingled potatoes grown on the Heritage Farms with potatoes purchased by OPI from other growers. Based upon the evidence, we could probably infer that the persons buying from OPI were bona fide purchasers and 3-D Sales could not enforce its lien against the potatoes. It is not necessary to make that inference, however, because it is clear that almost all the potatoes were sent out of state and, therefore, 3-D Sales' lien on the potatoes themselves was destroyed. That was

the basis of our decision in *Farmer's Feed v. Industrial Leasing,* 286 Or 311, 317, 594 P2d 397 (1979), that the lienholder could have a lien on the proceeds. We stated: "The defendant's actions in removing the cows from the state would have the effect of preventing plaintiff from foreclosing its lien and recovering the sums due plaintiff."

I would affirm the judgment of the trial court and the decision of the Court of Appeals impressing 3-D Sales' lien on the proceeds of the sale which are held by OPI.

Peterson and Tanzer, JJ., join in this dissenting opinion.

**PETERSON, J.,** concurring in part; dissenting in part.

I concur with part two of the majority opinion, concur in the result of part one, and join Denecke, C. J., in his dissent as to part 3. I write separately, however, to express my concern over the growth of the "substantial compliance" rule with which part one of the majority opinion is concerned.

The majority cites an Indiana decision, *Beneficial Finance Co. v. Wegmiller Bender Lbr. Co.,* ___ Ind App ___, 402 NE2d 41 (1980), for the proposition that a lien was valid, even though the requirements of the statute had not been met, because there was "substantial compliance" with the statute. The Indiana court held that whether there has been "substantial compliance" is determined by these elements: (1) "the degree of noncompliance with the letter of the statute," (2) the "policy" which underlies the statute, and (3) the prejudice which may have resulted to other interested parties. 402 NE2d at 45.

The majority opinion will be cited for the proposition that Oregon procedural statutes no longer require literal compliance; that substantial compliance is sufficient if the three elements set forth above exist. Lawyers, in advising their clients, and trial judges, in applying the law, no longer can rely on the clear meaning of procedural statutes; they must look to see whether there has been "substantial compliance" in light of the three enumerated factors.

I do not advocate slavish adherence to precedent, nor do I disagree with the principle that statutes should not be followed literally if the result is absurd or unreasonable. I am increasingly concerned, however, with the inability of competent lawyers, after careful study, to tell their clients what is the law; with the complaints of trial judges that appellate courts are forever "changing the goal posts"; and most importantly, with the growing frustration of people, rich and poor, uneducated and educated, to conduct their affairs with a measure of confidence that what they are doing is within the law.

The principle of certainty and stability is not without weight in the balance. Certainty achieves fairness to those who rely upon the law, efficiency in following precedent, continuity and equality in treating similar cases equally.[1] Security of expectation is an important consideration, and is the price paid in many cases in which the banner of "substantial compliance" is raised.[2]

I concur in the result in part one of the majority opinion because that is the law, based upon the Oregon precedents cited in the majority opinion. But we should not make further incursions to achieve results deemed to be

---

[1] *See* M. Bayles, *On Legal Reform: Legal Stability and Legislative Questions*, 65 Ky L J 631, 637 (1976-77).

[2]

"In our society, and particularly as concerns larger commercial, industrial and property interests, lawyers—legal counselors—are the principal agents for the engineering of expectations. The counselor in his law office is the retailer of the legal system for those who know when to turn to him, and can afford to consult him, to make it as sure as such things can be that the expectations arising from contracts, settlements, wills, negotiations and transactions will, in the course of time, be realized in fact.. . . Office counseling for the poor lacks the drama of a criminal defense or a consumers' class action, but the need is great and the opportunities for service hardly yet tapped. Who knows, perhaps there will not be too many lawyers after all.

"For, make no mistake about it, security of expectations is not just a rich man's value. It can be even more important to a poor person or a person of moderate means. If I have twenty substantial property or contractual interests, and one goes sour on me, I may be angered or inconvenienced, but I am not impoverished. But if I have only one or two more humble expectations--a pension, seniority in my job, the promise of a small legacy, an assurance of child support payments, or a low-rent long-term lease on my apartment--disappointment of that expectation can be disastrous." H. Jones, *An Invitation to Jurisprudence*, 74 Colum L Rev 1023, 1027 (1974).

desirable, at the expense of the rule that clear and unambiguous statutes should be applied according to their terms, unless an absurd result is reached thereby. *See* dissenting opinion in *Brown v. Portland School Dist. #1* 291 Or 77, 98, 628 P2d 1183 (1981).