HUNTINGTON,
*Respondent,*

*v.*

COFFEE ASSOCIATES FOOD
ENTERPRISES-CAFE, et al,
*Appellants.*

(No. 78-1927, CA 13338)

603 P2d 1183

Keith Y. Boyd, Eugene, argued the cause for appellant. With him on the brief was Bevans & McCullen, Eugene.

Edward V. O'Reilly, Eugene, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

BUTTLER, P. J.

Gillette, J., concurring in part opinion.

## BUTTLER, P. J.

Defendants appeal from a judgment in favor of plaintiff for damages sustained as a result of a temporary restraining order which had been obtained by Coffee Associates in a prior proceeding, and which, in this proceeding, the trial court found as a matter of law to have been wrongful for want of statutory authority. We affirm.

In the prior lawsuit Coffee Associates sought money damages against Huntington, its franchisee, for goods sold and delivered and for money due on checks which had not been paid upon presentment. When it filed its complaint Coffee Associates filed a motion pursuant to ORS 29.020-29.075 seeking appointment of a receiver over Huntington's business and also filed a motion for a restraining order pending a hearing. An order was granted requiring Huntington to show cause why a receiver should not be appointed, and a restraining order was issued prohibiting Huntington from disposing of any of his business assets pending the show cause hearing.[1] Defendant Travelers Indemnity Co. was surety on the undertaking required of Coffee Associates as a condition to the issuance of the restraining order.

The restraining order was in effect for 17 days, although the parties agreed that Huntington could carry on his business from about the tenth day until

---

[1] The restraining order provided:

"IT IS HEREBY ORDERED that the Defendant and each other person in possession or control of the hereinafter described property are hereby restrained from injuring, destroying, transferring, removing or otherwise disposing of the hereinafter described property until further order of this Court.

"The property to which this restraining order applies is described as follows:

"Stock of coffee brewers, stock of business including: coffee, cocoa and tea, accounts receivable whether on or off the premise of Cafe Coffee Services at P. O. Box 1324, Eugene, Oregon 97401."

the hearing was held.[2] At the show cause hearing a trial judge denied the motion for a receiver and dissolved the restraining order, holding that a restraining order was not authorized in an action for money damages.

Huntington thereafter commenced this action seeking damages sustained by his inability to conduct his business during the period in which the restraining order was in effect. The case was tried to the court on stipulated facts and the only question presented was a legal one: do the relevant statutes authorize the restraining order which was issued in the prior proceeding? The trial court found the restraining order was not authorized, and was, therefore, wrongful; it awarded damages to Huntington.

Coffee Associates concedes that its request for a receiver was properly denied. It contends, however, that the restraining order was authorized, independent of any other provisional remedy, by ORS 29.060, which provides:

"Subject to ORS 29.030, where hearing on a show cause order is pending or where the court finds that because of impending injury, destruction, transfer, removal or concealment of the property in which provisional process is sought there is probable cause to believe that immediate and irreparable injury, damage or loss to the plaintiff is imminent, if an undertaking has been filed by the plaintiff in accordance with ORS chapter 32, the court, in its discretion, may issue a temporary order directed to the defendant and each other person in possession or control of the claimed property restraining the defendant and each such other person from injuring, destroying, transferring, removing or otherwise disposing of property and requiring the defendant and each such other person to appear at a time and place fixed by

---

[2] ORS 29.065 directs the court to fix a time for the hearing after the third and before the seventh day after service. The original hearing date set by the court was more than seven days after service on plaintiff. No contention is made on appeal that a violation of this section resulted in the restraining order's being wrongful.

> the court and show cause why such restraint should not continue during pendency of the proceeding on the underlying claim."

It interprets this section as creating a new statutory restraining order which is not governed by the general provisions of ORS chapter 32 (Injunctions), except that the required undertaking must comply with ORS 32.020, and which, specifically, is available in an action at law as well as in suits in equity.

Although the statutory scheme supports this interpretation, it is not free from ambiguity, and we must determine, if possible, the intent of the legislature, *State ex rel. Cox v. Wilson,* 277 Or 747, 562 P2d 172 (1977); *Murphy v. Nilsen,* 19 Or App 292, 527 P2d 736 (1974). Although the meaning of the term "restraining order" is not questioned, it is not clear whether the legislature intended the requirements of ORS chapter 32, relating to a preexisting injunctive provisional remedy, as well as the requirements of ORS 29.060, be met before issuance of a restraining order pursuant to that section, or whether the only requirements intended were those set out in the section itself.

ORS 29.020 to 29.075 were enacted in 1973 in response to the U. S. Supreme Court decisions in *Fuentes v. Shevin,* 407 US 67, 92 S Ct 1983, 32 L Ed 2d 556, (1972), and *Sniadach v. Family Finance Corp.,* 395 US 337, 89 S Ct 1820, 23 L Ed 2d 349 (1969), which invalidated statutory provisional remedies in many states, including Oregon, as not meeting the requirements of due process because they permitted prejudgment attachment, garnishment or repossession provisional processes without a prior hearing.

In adopting ORS 29.020 to 29.075, the legislature established procedural requirements for all types of provisional process, with respect to all of which judicial intervention is necessary and, except for extraordinary circumstances, notice and hearing are required. The definition of "provisional process" in ORS

[599]

29.020(5) includes specific examples such as attachment, garnishment and replevin, and goes on to include

"* * * any other legal or equitable judicial process or remedy which before final judgment enables a plaintiff, or the court on behalf of the plaintiff, to take possession or control of, or to restrain use or disposition of, property in which the defendant claims an interest."

Thus, under the definition, both legal and equitable remedies are encompassed in the statutory scheme. No distinction between proceedings seeking legal as opposed to equitable remedies is made in any portion of the statute.

The court is given three options if a petition for provisional remedy meets the requirements of ORS 29.025[3] and if there is probable cause to believe that

---

[3] ORS 29.025 provides:

"To obtain an order for issuance of provisional process the plaintiff shall file with the clerk of the court from which such process is sought an affidavit or sworn petition requesting specific provisional process and showing, to the best knowledge, information and belief of the plaintiff:

"(1) The name and residence or place of business of the defendant;

"(2) Whether the underlying claim is based on a consumer transaction and whether provisional process in a consumer good is sought;

"(3) Description of the claimed property in particularity sufficient to make possible its identification, and the plaintiff's estimate of the value and location of the property;

"(4) Whether the plaintiff's claim to provisional process is based upon ownership, entitlement to possession, a security interest or otherwise:

"(5) A copy or verbatim recital of any writing or portion of a writing which evidences the origin or source of the plaintiff's claim to provisional process;

"(6) Whether the claimed property is wrongfully detained by the defendant or another person;

"(7) Whether the claimed property has been taken by public authority for a tax, assessment or fine;

"(8) Whether the claimed property is held under execution, garnishment or other legal or equitable process or, if it is so held, either

petitioner will be successful on the underlying claim asserted: the court then "shall consider whether it shall order issuance of provisional process, a restraining order or a show cause order." ORS 29.035.[4] These three options are further elaborated upon in ORS 29.055, 29.060 and 29.065.

ORS 29.055[5] and 29.060 make possible immediate action to protect the petitioner's interest in cases in

that the plaintiff has a superior right to provisional process in the property or that the property is exempt from such execution, garnishment or process;

"(9) If the plaintiff claims that the defendant has waived his right to be heard, a copy of the writing evidencing such waiver and a statement of when and in what manner the waiver occurred;

"(10) If provisional process is based on notice of a bulk transfer under ORS chapter 76 or a similar statute or provision of law, a copy of the notice;

"(11) Facts, if any, which tend to establish that there is a substantial danger that the defendant or another person is engaging in, or is about to engage in, conduct which would place the claimed property in danger of destruction, serious harm, concealment, removal from this state or transfer to an innocent purchaser;

"(12) Facts, if any, which tend to establish that without restraint immediate and irreparable injury, damage, or loss will occur;

"(13) Facts, if any, which tend to establish that there is substantial danger that the defendant or another person probably would not comply with a temporary restraining order; and

"(14) That there is no reasonable probability that the defendant can establish a successful defense to the underlying claim."

[4] ORS 29.035 provides:

"(1) The court shall consider the affidavit or petition filed under ORS 29.025 and may consider other evidence, including, but not limited to, an affidavit, deposition, exhibit or oral testimony.

"(2) If from the affidavit or petition or other evidence, if any, the court finds that a complaint on the underlying claim has been filed and that there is probable cause for sustaining the validity of the underlying claim, the court shall consider whether it shall order issuance of provisional process, a restraining order or a show cause order. The finding under this subsection is subject to dissolution upon hearing."

[5] ORS 29.055 provides:

"Subject to ORS 29.030, if the court finds that before hearing on a show cause order the defendant or other person in possession or control

which there is reason to believe protection may be necessary. ORS 29.055 provides for immediate issuance of the requested provisional remedy and ORS 29.060 provides for immediate issuance of a restraining order. ORS 29.065[6] contains the particulars for issuing a show cause order either by itself or in conjunction with process issued pursuant to ORS 29.055 or 29.060. All of these sections permit action to be taken on an *ex parte* application, but only under narrowly circumscribed conditions. They are the options open to the court in the interim between the petition for provisional remedy and the show cause hearing.

We conclude that the statutes in question do authorize the issuance of a restraining order independent

---

of the claimed property is engaging in, or is about to engage in, conduct which would place the claimed property in danger of destruction, serious harm, concealment, removal from this state or transfer to an innocent purchaser or that the defendant or other person in possession or control of the claimed property would not comply with a temporary restraining order, the court shall order issuance of provisional process in property which probably would be the subject of such destruction, harm, concealment, removal, transfer or violation."

[6] ORS 29.065 provides:

"(1) Subject to ORS 29.030, the court shall issue an order directed to the defendant and each person having possession or control of the claimed property requiring the defendant and each such other person to appear for hearing at a place fixed by the court and at a fixed time after the third day after service of the order and before the seventh day after service of the order to show cause why provisional process should not issue.

"(2) The show cause order issued under subsection (1) of this section shall be served personally on the defendant and on each other person to whom the order is directed.

"(3) The order shall:

"(a) State that the defendant may file affidavits with the court and may present testimony at the hearing; and

"(b) State that if the defendant fails to appear at the hearing the court will order issuance of the specific provisional process sought.

"(4) If at the time fixed for hearing the show cause order under subsection (1) of this section has not been served on the defendant but has been served on a person in possession or control of the property, the court may restrain the person so served from injuring, destroying, transferring, removing or concealing the property pending further order of the court."

of ORS chapter 32, but that it be used only in situations where a restraining order is less oppressive to the defendant than would be some other provisional remedy, if a restraining order would afford that protection to which the plaintiff is reasonably entitled.[7] This interpretation is borne out by the statement of the bill's sponsor that a restraining order was included as an option to give "flexibility to the plaintiff and provide that if he could live with the restraining order, that was all he should go for rather than requesting immediate authority to pick up the goods." Minutes, House Judiciary Committee, June 14, 1973. There is no indication in ORS 29.060 or in the other related sections enacted in 1973, or in their legislative history, that this flexibility was intended to apply only to proceedings in equity. We decline to so hold.

Our conclusion that ORS 29.060 authorizes a restraining order in a legal action does not determine that the restraining order obtained by Coffee Associates was not wrongful. That restraining order was obtained pending a hearing on the appointment of a receiver. The receiver was properly denied, and Huntington contends that the restraining order was wrongful because it was based, at least in part, on a request for a further provisional remedy to which Coffee Associates was not entitled.

The trial court in the prior proceeding held at the show cause hearing that there had been no authority to grant the restraining order because there was no basis upon which a receiver could have been appointed. The trial court in this proceeding arrived at the same conclusion and for that reason held the restraining order to have been wrongfully issued.

---

[7] For example, there might be situations when a restraining order would afford reasonable protection to the creditor insofar as the debtor's dealing with the property is concerned, and would be less onerous on the debtor than would attachment. However, questions of priority of rights in the property vis-a-vis other creditors might require the issuance of a writ of attachment to give the attaching creditor the lien priority to which he is entitled, and without which he may end up with an uncollectible judgment. *See* ORS 29.150 and 29.190.

Some confusion arises under ORS 29.060 because of the language in both ORS 29.035 and 29.075 which suggests that a restraining order is something other than provisional process. It is clear, however, that a restraining order is itself a provisional remedy, by definition, in that it restrains the use or disposition of property in which the defendant claims an interest before final judgment. ORS 29.020(5). The apparent reason for referring to a restraining order as something separate or different from provisional process is that the restraining order was newly created by the 1973 legislation, whereas the other provisional processes referred to preexisted that legislation.

We conclude that a restraining order may, under appropriate circumstances, be granted as a provisional remedy independent of another provisional remedy. It would follow that the wrongfulness of the restraining order issued before a hearing does not depend upon whether the petitioner is later granted the further provisional remedy sought. That conclusion is supported by ORS 29.075(2), which provides:

> "Subject to ORS 29.030, if the court on hearing on a show cause order issued under ORS 29.065 finds that there is probable cause for sustaining the validity of the underlying claim *but that the provisional process sought cannot properly be ordered, the court in its discretion may continue or issue a restraining order.*" (Emphasis supplied.)

This section appears to apply to the situation involved in this case. Coffee Associates obtained a show cause order pursuant to ORS 29.065. At the hearing the court found that the further provisional remedy sought (appointment of a receiver) could not properly be ordered. ORS 29.075 provides for the continuance or issuance of a restraining order even though the other provisional remedy sought by the petitioner could not be granted. It appears to follow from ORS 29.075(2) that the issuance of the original restraining order was not wrongful as a matter of law simply because the other provisional remedy was not available. Rather,

that section indicates that a restraining order is a provisional remedy in itself which may be proper when other provisional process is not available, or is more onerous, and which the court may, in its discretion, grant or continue.

Huntington contends that if the statutes in question authorize the *ex parte* issuance of restraining order here involved, they run afoul of the due process requirements set forth in *Fuentes v. Shevin, supra.* Both *Fuentes* and *Sniadach v. Family Finance Corp., supra,* recognized that while due process, as a general rule, requires notice and hearing before a defendant's property is seized or his interest in property is interfered with unduly, there "may be cases in which a creditor could make a showing of immediate danger that a debtor will destroy or conceal disputed goods" *(Fuentes,* 407 US at 93), such as to justify a pre-judgment provisional remedy to the creditor without a hearing if there are other sufficient safeguards.

Subsequent to *Fuentes* and *Sniadach* the Supreme Court decided *Mitchell v. W. T. Grant Co.,* 416 US 600, 94 S Ct 1895, 40 L Ed 2d 406 (1974), and *North George Finishing, Inc. v. Di-Chem, Inc.,* 419 US 601, 95 S Ct 719, 42 L Ed 2d 751 (1975). *Mitchell* upheld a Louisiana sequestration statute which provided for issuance by a judge of the writ on the *ex parte* application of the creditor who claimed a vendor's lien in the property to be sequestered. There was no notice or opportunity for a hearing prior to the issuance of the writ.

Distinguishing this case from *Fuentes,*[8] the majority emphasized several factors: (1) both the creditor and the debtor had an interest in the particular property which was in dispute and the state could afford the creditor certain protections as well as the debtor; (2) the creditor was damaged by the continued possession and use of the goods by the debtor; (3) the writ was authorized by a judge rather than a clerk; (4) the

---

[8] Both the dissenting and concurring opinions in *Mitchell* stated that the effect of the majority opnion was to overrule *Fuentes.*

creditor had to put up a bond; (5) the debtor could get the goods back by putting up a bond and even without a bond could seek an immediate hearing in which the creditor was required to prove the bases upon which the writ had been issued; (6) there was a real risk that the buyer would conceal or transfer the goods and the state has a right to consider that factor in determining the procedures to be used. The court balanced the interests involved and found that the risk to the creditor in not issuing the writ was greater than the loss of use to the debtor in the temporary dispossession of the goods and that the procedures provided sufficient safeguards to the debtor under those circumstances.

In *North Georgia Finishing, Inc., supra,* the Supreme Court invalidated a Georgia garnishment statute, relying mainly on *Fuentes.* The garnishment involved was of a debt of a corporation rather than wages of an individual. The court interpreted *Fuentes* as holding that official seizures without notice or an opportunity for a hearing *or other safeguard against mistake* violate due process. *Mitchell,* the Court said, was different because the safeguards were present. The Georgia statute had none of those characteristics whch the court characterized as "saving," such as issuance by a judge, an affidavit which required more than conclusory allegations, opportunity for an immediate hearing after seizure and a bond filed by the creditor to protect the debtor if the writ was found to be wrongful.

It is apparent from the foregoing discussion of the United States Supreme Court decisions that not all pre-judgment provisional processes issued without prior hearing violate due process, although the perimeters of the exceptions are not clear. *See* note, *Specifying the Procedures Required by Due Process: Toward Limits on the Use of Interest Balancing,* 88 Harv L Rev 1510 (1975). We need not attempt here to define the constitutional limits within which states

may provide such process. It is sufficient to say that the narrow and stringent requirements of ORS 29.020 to 29.075, applied to the application for a restraining order pursuant to ORS 29.060 do not offend due process. The principal saving ingredients are that: (1) the *court* must make certain findings, based upon facts and not conclusory allegations, justifying immediate judicial intervention to protect a legitimate interest of the plaintiff when the court finds there is probable cause to sustain the validity of the underlying claim; (2) a bond or undertaking is required; (3) a hearing must be held after the third day after service and before the seventh day after service.

Accordingly, we hold that ORS 29.020 to 29.075 do not violate a defendant's due process rights insofar as they permit a prejudgment restraining order prior to hearing under narrowly circumscribed grounds and only by court order. However, Coffee Associates did not meet the statutory requirements and, therefore, the restraining order obtained against Huntington was wrongful. The statutory scheme and the principles of due process as enunciated by the U. S. Supreme Court in the cases discussed above require that extraordinary circumstances be present to justify the issuance of provisional process before a hearing. ORS 29.025 sets out the statutory requirements for issuance of provisional process. The affidavit which must accompany the petition for provisional process must include some 14 items, including:

> "(11) *Facts,* if any, which tend to establish that there is a substantial danger that the defendant or another person is engaging in, or is about to engage in, conduct which would place the claimed property in danger of destruction, serious harm, concealment, removal from this state or transfer to an innocent purchaser;
>
> "(12) *Facts,* if any, which tend to establish that without restraint immediate and irreparable injury, damage, or loss will occur." (Emphasis added.)

Not only does the statute require a statement of "facts" tending to show the danger of harm, but this

would appear to be required by due process. As noted above, one of the "saving" elements of the statute upheld in *Mitchell,* was an affidavit requiring more than conclusory allegations. The affidavit submitted by Coffee Associates in support of its petition contains only conclusory language.[9] It does not contain sufficient *facts* upon which the court could find, as required by ORS 29.060,

> "* * * that because of impending injury, destruction, transfer, removal or concealment of the property * * * there is probable cause to believe that immediate and irreparable injury, damage or loss to plaintiff is imminent * * *."

Because Coffee Associates did not meet the requirements of the statute, the restraining order was wrongful.[10]

---

[9] The affidavit states, in pertinent part:

"9.  Plaintiff believes that there is a substantial danger defendant or other persons might transfer or otherwise dispose of said personal property, and all of said property except the accounts receivable listed and coffee brewers are being held for sale to innocent purchasers.

"10. Without restraint, defendant will attempt to sell said property to innocent purchasers or otherwise place the same beyond the reach of plaintiff. Defendant has inadequate other assets or resources with which to pay plaintiff's claim, and has been unable to pay the same although requested to do so by plaintiff. If said assets and property above listed are placed beyond the reach of plaintiff, plaintiff will be unable to collect the claim upon which the complaint is based."

This merely states the statutory requirement in conclusory terms.

[10] We do not mean to imply that the restraining order obtained by Coffee Associates in the prior proceeding would have been authorized as provisional process ancillary to its complaint seeking money damages only if Coffee Associates had complied with the statute. The restraining order had the effect of enjoining Huntington from carrying on his business, which was substantially more onerous and burdensome than a writ of attachment would have been, assuming that the attachment would have applied to less than all of Huntington's stock in trade and accounts receivable, which assumption the record supports. The complaint prayed for $8,130.09, plus interest thereon, and attorney fees of $2,000. The affidavit in support of the order to show cause stated that the coffee brewers and stock did not exceed $20,000 in value, and that the accounts receivable did not exceed $15,000. It appears that assets worth about $35,000 were tied up to secure a claim of about $10,000.

In summary, we hold that ORS 29.060 authorizes a restraining order as provisional process under the circumstances described in that statute whether the underlying action is one at law or in equity, and that issuance of such an order is not dependent upon the provisions of ORS chapter 32 except for the specific requirement of an undertaking complying with chapter 32. In addition, we hold that a restraining order issued under ORS 29.060 is not wrongful solely because no other provisional remedy is sought or, if one is sought, it is found upon hearing to be unavailable. Finally, we hold that notwithstanding the foregoing conclusions, the restraining order sought and obtained by Coffee Associates in the prior proceedings was not authorized, and was, therefore, wrongful.[11]

Affirmed.

**GILLETTE, J.,** concurring in part.

It is axiomatic that courts do not reach constitutional questions unless they must. In this case, it is not necessary to do so: defendant's failure to comply with the provisions of ORS 29.060—whether or not that statute is constitutional—is a sufficient basis upon which to affirm the judgment for plaintiff. I concur in that portion of the lead opinion which so holds. On the other hand, I cannot join in the majority's long discussion on the constitutional ramifications of the statute. That discussion may be correct; it is certainly unnecessary.

---

[11] The concurring opinion would decide only that Coffee Associates did not comply with the statute, and suggests that the rest of the majority opinion is dicta. It is curious, at best, that a party would be required to comply with a statute unless by doing so he would be entitled to the benefits thereof. If the statute does not authorize a restraining order, there would be no purpose in complying with its requirements.