Argued and submitted March 28,
appeal dismissed August 4, 1980

LENT, et ux,
*Appellants,*

*v.*

ROBINSON,
*Defendant,*

U. S. NATIONAL BANK OF OREGON,
*Respondent.*

(No. 106879, CA 13723)

615 P2d 338

Bonnie Serkin Pound, Salem, argued the cause for appellants. With her on the briefs were J. R. Perkins, III, and Churchill & Leonard, Salem.

Paul J. DeMuniz, Salem, argued the cause for respondent. With him on the brief was Garrett, Seideman, Hemann & Robertson, P. C.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

In this action for breach of contract and deceit for defendant Robinson's failure to deliver clear title to a truck, plaintiffs obtained a prejudgment writ of attachment and garnishment of Robinson's checking account at the U. S. National Bank of Oregon. The U. S. National Bank (garnishee) initially certified that defendant's account balance was $15,087.75, and paid that sum to the sheriff. However, the trial court subsequently permitted garnishee to amend its certificate to show that on the date of attachment it actually held no funds of defendant. Garnishee moved both for a set-off against the garnished funds and for an order quashing the writ of attachment. The trial court granted the motions and ordered the funds returned to garnishee. On appeal, plaintiffs advance four assignments of error, each of which challenges the return of the funds. Garnishee moved to dismiss the appeal for want of an appealable order.

Garnishee asserts that the order quashing the writ is not appealable under ORS 19.010(2)(a) because it does not in effect determine the action "as to prevent a judgment * * * therein." Orders quashing prejudgment attachments are generally interlocutory and therefore not appealable, *Van Voorhies v. Taylor,* 24 Or 247, 249, 33 P 380 (1893).

Plaintiffs contend, however, that the attachment here does not merely provide security for a judgment that may be taken against defendant, but it provides the basis for *quasi in rem* jurisdiction over him. Therefore, the argument goes, the order quashing the attachment is a final, appealable order because it destroys *quasi in rem* jurisdiction, which plaintiffs assert is the only jurisdictional basis they have available to them, and thereby prevents entry of judgment.

If plaintiffs are correct in their assertion that the order quashing the writ deprived the court of jurisdiction to proceed, their contention might have

[581]

merit. Before we may decide that question, and the related one of whether the order is appealable, it is necessary to determine whether plaintiffs did acquire *quasi in rem* jurisdiction over defendant; the answer to that question depends in part on whether the trial court had authority to issue the writ in the first instance. Because we conclude that the court did not have that authority, the order from which plaintiffs appeal did not prevent the entry of a judgment; therefore, we dismiss the appeal.

As we have pointed out in *Huntington v. Coffee Associates,* 43 Or App 595, 599, 603 P2d 1183 (1979):

"ORS 29.020 to 29.075 were enacted in 1973 in response to the U. S. Supreme Court decisions in *Fuentes v. Shevin,* 407 US 67, 92 S Ct 1983, 32 L Ed 2d 556, (1972), and *Sniadach v. Family Finance Corp.,* 395 US 337, 89 S Ct 1820, 23 L Ed 2d 349 (1969), which invalidated statutory provisional remedies in many states, including Oregon, as not meeting the requirements of due process because they permitted prejudgment attachment, garnishment or repossession provisional processes without a prior hearing.

"In adopting ORS 29.020 to 29.075, the legislature established procedural requirements for all types of provisional process, with respect to all of which judicial intervention is necessary and, except for extraordinary circumstances, notice and hearing are required. * * *"

■ As we view the question here, the issue is what kind of notice to defendant is required before a hearing may be held and attachment authorized.[1] The

---

[1] The statutes provide for a few well-defined and limited exceptions permitting the granting of provisional process prior to notice and hearing. For example, a temporary restraining order may issue to protect the property sought to be attached pending the show cause hearing on the attachment. ORS 29.060. Moreover, ORS 29.055 permits the court to order provisional process pending the hearing upon a showing that damage to the property is threatened or that the person in possession of the property would not comply with a temporary restraining order.

Order for Provisional Process recites that service was "duly made" upon defendant on a certain date at a given time. The return of service states that service was made on defendant in the State of Washington by delivering to defendant's wife a true copy of the summons, complaint, petition for provisional process, order to show cause and temporary restraining order. Although substituted service is permitted in certain specified instances (see former ORS 15.080(8); ORCP 7D(2)(b)), ORS 29.065(2), which controls this proceeding, expressly requires that the order to show cause "be served *personally* on the defendant and on each other person to whom the order is directed." (Emphasis added.) Personal service means delivery to the person to be served. See ORCP 7D(2)(a); Peterson, *The Summons — A Slippery Threshold,* 46 Or L Rev 188, 192 (1967).

■    Even if we were to construe that section as permitting substituted service, if plaintiffs did perfect service on defendant, the court would have personal jurisdiction over him and the claimed *quasi in rem* jurisdiction would not be necessary to permit a judgment to be entered against defendant; therefore the order from which plaintiffs appeal would not be an appealable final order.

■    Plaintiffs contend that here the attachment is for the purpose of obtaining *quasi in rem* jurisdiction and therefore the technical requirements for prejudgment attachments to provide security for a subsequent judgment do not apply. We find no such distinction in

Plaintiffs obtained a temporary restraining order against the Garnishee's disposing of the funds in defendant's bank account until the hearing, and that order could have been continued at the time fixed for hearing on the show cause order because the defendant had not been served. ORS 29.065(4). It expired by its own terms after the hearing and the writ issued; plaintiffs do not contend otherwise. We express no opinion as to what effect a continuance of the restraining order would have on *quasi in rem* jurisdiction. *Cf. Huntington v. Coffee Associates, supra,* 43 Or App at 603, note 7.

the 1973 legislation. It is true that the attachment and garnishment statutes as they existed prior to 1973 permitted prejudgment attachment at any time after the issuance of summons (ORS 29.110) and without notice to the defendant. Although it does not appear that those provisions were expressly repealed by the 1973 legislation (Oregon Laws 1973, ch 741), it is apparent, as we noted in *Huntington v. Coffee Associates, supra,* that the later legislation was enacted to overcome the due process deficiencies in the then existing legislation. We need not decide whether the legislature went further than *Sniadach, supra,* and *Fuentes, supra,* required in terms of providing an opportunity for hearing prior to issuance of prejudgment provisional remedies, or whether the Legislative Assembly's solution was wise. The fact is that the 1973 legislation conflicts with the prior law, and to the extent of the conflicts, the later legislation controls. *See Davis v. Wasco IED,* 286 Or 261, 272, 593 P2d 1152 (1979).

Because the trial court did not have authority to authorize the writ of attachment, its order quashing the writ is not an appealable order.

Appeal dismissed.