Argued and submitted February 9, affirmed March 22, 1983

, PADDACK et al,
*Petitioners on Review,*

*v.*

RASMUSSEN et al,
*Respondents on Review.*

(No. 79-2102, CA A21314, SC 28999)

660 P2d 677

Thomas J. Barnett, Portland, argued the cause for petitioner on review. With him on the petition were David S. Paull and Bailey & Paull, Portland.

Paul R. Meyer, Portland, argued the cause for respondent on review. With him on the response to the petition were Jan D. Sokol and Kobin & Meyer, P.C., Portland.

Before Lent, Chief Justice, and Peterson, Campbell, Roberts, Carson and Jones, Justices.

JONES, J.

## JONES, J.

This is an action brought for damages for the wrongful removal of a vessel, The Nordic Monarch, from Oregon resulting in the inability of plaintiffs to foreclose their lien. The trial court granted defendants' motion for summary judgment on the grounds that plaintiffs' lien had not been perfected and that removal of the vessel was therefore not wrongful. The Court of Appeals affirmed, holding that "seizure of the lien-subject vessel is a condition precedent to the protection of the lien" and that wrongful removal cannot occur in the absence of a perfected lien. *Paddack v. Rasmussen,* 59 Or App 290, 650 P2d 1036 (1982). We affirm.

Plaintiffs are the trustees of the Oregon-Washington Carpenters - Employers Health and Welfare, Pension, Vacation Savings, and Apprenticeship and Training Trust Funds. They claim a lien against defendants' vessel under ORS chapter 783 for benefit contributions due for carpenter labor expended in construction of the vessel for the Hillstrom Shipbuilding Company, with whom the defendants had contracted to build the vessel. In November, 1979, plaintiffs informed an attorney for defendant Rasmussen that they claimed a lien on the vessel. In early December, 1979, they followed the call with a letter claiming a construction lien under ORS 87.010.[1] On December

---

[1] ORS 87.010 has no application to this case. ORS 87.010(1)-(4) provides:

"(1) Any person performing labor upon, transporting or furnishing any material to be used in, or renting equipment used in the construction of any improvement shall have a lien upon the improvement for the labor, transportation or material furnished or equipment rented at the instance of the owner of the improvement or his construction agent.

"(2) Any person who engages in or rents equipment for the preparation of a lot or parcel of land, or improves or rents equipment for the improvement of a street or road adjoining a lot or parcel of land at the request of the owner of the lot or parcel, shall have a lien upon the land for work done, materials furnished or equipment rented.

"(3) A lien for rented equipment under subsection (1) or (2) of this section shall be limited to the reasonable rental value of the equipment notwithstanding the terms of the underlying rental agreement.

"(4) Trustees of an employe benefit plan shall have a lien upon the improvement for the amount of contributions, due to labor performed on that improvement, required to be paid by agreement or otherwise into a fund of the employe benefit plan."

18, plaintiffs brought suit against both the owner and the vessel to foreclose their lien, claiming entitlement to a lien under ORS 783.010.[2] The owner had the vessel towed to a Washington shipyard for completion of construction on December 26, 1979. Defendant Rasmussen was not served until January 8, 1980, after the vessel arrived in Washington. Plaintiffs' foreclosure suit was then dismissed for lack of jurisdiction over the vessel; plaintiffs did not appeal but instead brought this action for wrongful removal of the vessel.

The plaintiffs allege that the defendants' removal of the vessel prevented them from foreclosing their "lien" against the vessel and that defendants are thereby personally liable to them. We hold that a lien claimant under ORS 783.010 must perfect his lien by causing the subject vessel to be seized as provided by ORS 783.030, 783.040 and 783.050.[3] In the absence of such a seizure, no lien is acquired.

---

ORS 87.005(5) defines "improvement":

" 'Improvement' includes any building, wharf, bridge, ditch, flume reservoir, well, tunnel, fence, street, sidewalk, machinery, aqueduct and all other structures and super-structures, whenever it can be made applicable thereto."

A vessel is not an "improvement."

[2] ORS 783.010 provides in pertinent part:

"Every boat or vessel used in navigating the water of this state or constructed in this state is liable and subject to a lien:

"* * * * *

"(2) For all debts due to persons by virtue of a contract, expressed or implied, with the owners of a boat or vessel, or with the agents, contractors or subcontractors of such owner, * * * to construct * * * such boat or vessel, on account of labor done * * * by mechanics, tradesmen or others in the building * * * such boat or vessel * * *."

[3] ORS 783.030 provides:

"Any person having a demand as mentioned in ORS 783.010, instead of proceeding for recovery thereof against the master, owner, agent or consignee of the boat or vessel, may at his option commence an action against such boat or vessel by name."

ORS 783.040 provides:

"Any person wishing to commence an action against a boat or vessel shall file his complaint against such boat or vessel by name with the clerk of the circuit court of the county in which the boat or vessel may lie or be. The

We agree that the Court of Appeals correctly stated the law:

"* * * The complaint is to be filed against the vessel. ORS 783.040. When the complaint is filed, the clerk of the circuit court of the county where the vessel is located then issues a warrant for seizure of the vessel by the sheriff. ORS 783.050. Seizure of the vessel perfects the lien and puts the owners on notice of the claim against it. *Cordrey v. Steamship 'Bee,'* 102 Or 636, 650-54, 201 P2d 202 (1922). After return of the warrant, a proceeding is held in circuit court against the vessel seized. ORS 783.060. Nothing in ORS chapter 783 provides for different procedures where the owners of the vessel are also named in the complaint. In either case, seizure of the lien-subject vessel is a condition precedent to the perfection of the lien. Plaintiffs' lien was unenforceable." 59 Or App at 293-94.

There is nothing in the early cases cited by plaintiff, *The Nestor,* 18 Fed Cas 9, Case No. 10, 126 (CCD Ma 1831); *Benbow v. The James Johns,* 56 Or 554, 108 P 634 (1910); *The Victorian,* 24 Or 121, 32 P 1040 (1893), which suggests that a civil damages claim arises against the vessel owner when the party claiming a labor or material construction lien fails to seize the ship and the vessel leaves port. These cases do hold that an *in rem* remedy is available and that the ship owners can be sued individually. ORS 783.030 also provides that "any person having a demand [for wages due or for work done on board a vessel], instead of proceeding for recovery thereof against the master, owner, agent or consignee of the * * * vessel, may at his option commence an action against such * * * vessel by name." The plaintiffs' theory of recovery lies in tort — for wrongful removal of the vessel. They make no claim under ORS 783.030 for either a direct contract action against the owner or an *in rem* action against the vessel.

complaint shall set forth the plaintiff's demand in all its particulars, and on whose account the same accrued, and shall be verified by the plaintiff or some credible person for him."

ORS 783.050 provides:

"Whenever the complaint is filed, the clerk shall issue a warrant thereon, commanding the sheriff to seize the boat or vessel mentioned in the complaint, with her tackle, apparel, and furniture and retain the same until discharged from such custody by due course of law."

In *Cordrey v. Steamship "Bee,"* 102 Or 636, 651, 201 P 202, 20 ALR 1079 (1921), we quoted from *Keating v. Spink,* 3 Ohio St 105, 62 AD 214 (1853):

> " 'The proceeding, therefore, is strictly and technically *in rem;* it is pursued, without reference to the owner, to enforce a liability which the thing itself has incurred, and the thing itself is condemned to make reparation. Possession is the essential element upon which the jurisdiction of the court depends; and as this possession is deemed that of the sovereignty under whose authority the court sits, if any question can be regarded as settled by the unanimous opinion of courts and jurists it is this, that "the law regards the seizure of the thing as constructive notice to the whole world" ' * * *"

Plaintiffs contend that perfection of the lien was unnecessary. They maintain this action is not one for foreclosure but for damages arising from the wrongful removal of lien-subject property. Plaintiffs rely on *Farmer's Feed v. Industrial Leasing,* 286 Or 311, 594 P2d 397 (1979). In *Farmer's Feed,* this court held that when, after a lien has been perfected, the chattels are wrongfully converted, and "where equity jurisdiction attaches, the proceeds stand in the place of the property sold." 286 Or at 317.[4] The element of having a *perfected* lien furnishes a principled basis for distinguishing between a wrongful prevention of foreclosure in derogation of a *perfected* lien right and a lawful disposition by an owner of his property.

---

[4] In *Farmer's Feed,* 286 Or at 313, the plaintiffs sold feed on open account to Hulbert, who had leased 325 head of dairy cows from the defendant, ILC. When Hulbert failed to pay the plaintiff for the feed, plaintiff filed a Notice of Lien for the balance owed pursuant to the then effective provisions of ORS 87.295. *After* filing of the Notice of Lien, ILC repossessed 141 head of cows, removed them from the state, sold part of them, and re-leased the rest to a third party.

On appeal, we affirmed the judgment against ILC, noting that ILC had removed and sold or re-leased the livestock *after* the plaintiff's lien had been filed. The court held that where the owner of lien-subject property wrongfully disposes of it, the proceeds stand in place of the property sold, and that an equity court could dispose of the controversy and render a money judgment. 286 Or at 317. In support of its holding, the Oregon Supreme Court cited two cases, *Division of Labor Law Enforcement v. Siskiyou Mills,* 229 Cal App 2d 105, 40 Cal Rptr 111 (1964), and *Continental Supply Co. v. White,* 92 Mont 254, 12 P2d 569 (1932). In both cases plaintiff had *perfected* a non-possessory lien against the property disposed of by the defendants *prior* to removal and sale of the property. *See also McGregor v. Heritage,* 291 Or 420, 631 P2d 1355 (1981).

Since the lien was not perfected, there can be no damages for removal of the property.

Affirmed.