Argued and submitted July 8, 1983, affirmed January 25, reconsideration denied March 9, petition for review denied April 24, 1984 (297 Or 82)

## ROCKY B. FISHERIES, INC. et al,
*Appellants,*

*v.*

## NORTH BEND FABRICATION & MACHINE, INC. et al,
*Respondents.*

(A8110-06552; CA A25230)

676 P2d 319

Barbara J. Gazeley, Portland, argued the cause for appellants. With her on the briefs were John L. Langslet and Martin, Bischoff, Templeton, Biggs & Ericsson, Portland.

J. P. Graff, Portland, argued the cause for respondents. With him on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

This action at law for damages arose out of the *in rem* seizure of a fishing vessel, the Rocky B, pursuant to ORS 783.010 *et seq.* Plaintiffs contend that defendants are liable under 42 USC § 1983, because the seizure was accomplished without due process of law, and are also liable for failure to comply with the requirements for issuance of provisional process specified in ORS 29.020 *et seq* (now codified in ORCP 81-85). They also seek recovery under theories of conversion, abuse of process and interference with contractual relations. The trial court granted defendant North Bend's motion for summary judgment and the individual defendants' motion to dismiss; plaintiffs appeal from the resulting judgment dismissing all claims except one, which was added as a separate claim after the court had ruled on the motions.[1]

In May, 1979, plaintiffs Brown, now the sole shareholders of plaintiff Rocky B. Fisheries, Inc., began construction of a fishing vessel, the Rocky B. Construction was financed by Southern Oregon Production Credit Association (PCA), which secured its loan of more than $427,000 with what plaintiffs characterize as "preferred ship's mortgages." Defendant North Bend supplied services and materials on an open account for the construction, fitting, furnishing and equipping of the vessel. An outstanding balance of $5,410.04 was due when North Bend, through its attorneys, defendants Finneran and Dudrey, claimed a nonmaritime lien on the vessel in that amount pursuant to ORS 783.010(2).

On August 1, 1980, North Bend filed an action against the Rocky B, seeking a judgment against it for the balance due, and moved for an order authorizing the arrest of the Rocky B. On August 5, 1980, after requiring North Bend to post a bond, a circuit court judge ordered the clerk of the court to issue a warrant for the seizure of the vessel. The warrant was issued by the clerk, and the vessel was seized by the sheriff. Plaintiffs learned of the seizure immediately and demanded that defendants release it. Because the seizure of

---

[1] The remaining claim alleges that the seizure of the vessel was illegal, because the Oregon court lacked jurisdiction and that jurisdiction vested exclusively in the federal court. The judgment, pursuant to ORCP 67B, articulates reasons for determining that there is no just reason for delay.

the vessel constituted a default on the mortgage, PCA commenced an action in federal district court to foreclose its mortgage. The marshal, acting pursuant to an order of that court, seized the vessel and currently holds it under arrest.

■ Under ORS 783.010, every boat or vessel used[2] in the waters of, or constructed in, the state is liable and subject to a lien, so far as relevant:

"(1)  For wages due to persons employed, for work done or services rendered on board such boat or vessel.

"(2)  For all debts due to persons by virtue of a contract, expressed or implied, with the owners of a boat or vessel, or with the agents, contractors or subcontractors of such owner, or with any person having them employed to construct, repair or launch such boat or vessel, on account of labor done or materials furnished by mechanics, tradesmen or others in the building, repairing, fitting and furnishing or equipping such boat or vessel, or on account of stores and supplies furnished for the use thereof, or on account of premiums for insurance placed on or with respect to such boat or vessel, or on account of launchways constructed for the launching of such boat or vessel."

■ Under ORS 783.030 and 783.040, a creditor claiming a lien under ORS 783.010 may commence an *in rem* state court action directly against a vessel by filing a complaint setting forth his demand in all its particulars in the circuit court of the county in which the vessel is located. ORS 783.050 provides that when the complaint is filed, the clerk of the court *shall* issue a warrant commanding the sheriff to seize the vessel named in the complaint. Seizure of the vessel under that statutory procedure is a prerequisite to the perfection of a lien under ORS 783.010. *Paddack v. Rasmussen,* 294 Or 599, 604, 660 P2d 677 (1983).

On return of the warrant for the arrest of the vessel, "proceedings shall be had in circuit court against the boat or vessel seized, in the same manner as if the action had been commenced against the person on whose account the demand

---

[2] To the extent that ORS ch 783 purports to authorize state court actions with respect to maritime liens, it conflicts with the exclusive admiralty jurisdiction of the United States District Courts. Therefore, in *The Victorian,* 24 Or 121, 32 P 1040 (1893), the Supreme Court construed the provisions of ORS ch 783 to apply only to nonmaritime liens, *i.e.,* liens with respect to labor and materials used in the original construction of ships.

accrued." ORS 783.060. The master, owner, agent or consignee of the vessel may appear and answer the complaint, ORS 783.070, but if no appearance is made, the plaintiff may obtain a default judgment against the vessel, which is the defendant. ORS 783.080. ORS 783.090 provides that the master or other interested person may have the vessel released prior to adjudication of the underlying claim by entering into an undertaking in favor of the plaintiff, with sufficient security to be approved by the judge or clerk of the court.

Plaintiffs contend that the prejudgment seizure of the Rocky B under chapter 783 violated their due process rights under the Fourteenth Amendment to the United States Constitution, giving rise to a claim under 42 USC § 1983. Their catalog of perceived constitutional defects in chapter 783 is drawn from the deficiencies exposed in four Supreme Court cases that dealt with the constitutionality of state laws governing the seizure of a debtor's property before judgment: *Sniadach v. Family Finance Corp.,* 395 US 337, 89 S Ct 1820, 23 L Ed 2d 349 (1969); *Fuentes v. Shevin,* 407 US 67, 92 S Ct 1983, 32 L Ed 2d 556 (1972); *Mitchell v. W.T. Grant Co.,* 416 US 600, 40 L Ed 2d 406, 94 S Ct 1895 (1974), and *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 US 601, 95 S Ct 719, 42 L Ed 2d 751 (1975).

In *Sniadach v. Family Finance Corp., supra,* the Court invalidated a Wisconsin garnishment statute which allowed a creditor, without prior notice or hearing, to attach the wages of a debtor pending the outcome of the creditor's claim. Similarly, in *Fuentes v. Shevin, supra,* the Court struck down Florida and Pennsylvania prejudgment replevin procedures that allowed creditors to seize goods in which they claimed an interest without providing the debtor with prior notice or an opportunity to be heard. The general rule to be gleaned from these cases is that, except in "extraordinary situations," whenever an owner is to be deprived of the use of his property during the pendency of litigation, due process requires notice and opportunity for an early hearing before a judicial officer.

In *Mitchell v. W. T. Grant Co., supra,* and *North Georgia Finishing, Inc. v. Di-Chem, Inc., supra,* the Court expanded that rule by holding that official seizures without prior notice and hearing *or other safeguards against mistake*

violate due process. *Mitchell* upheld a Louisiana sequestration statute which provided for the judicial issuance of a writ on the *ex parte* application of a creditor who claimed an interest in the property to be sequestered. Although no notice or opportunity for hearing was required prior to the issuance of the writ, the statute afforded other safeguards by requiring: (1) a sworn affidavit showing the creditor's claim and the right to repossession; (2) issuance of a writ authorizing the seizure by a judge rather than a court clerk; (3) a bond sufficient to compensate the debtor for damages caused by a wrongful seizure, and (4) an opportunity for the debtor to seek "immediate" dissolution of the writ, which must be ordered unless the creditor "proves the grounds upon which the writ was issued." 416 US at 606. In *North Georgia*, the court relied mainly on *Mitchell* in invalidating a Georgia garnishment statute which authorized a court clerk to issue a writ of impoundment based on an affidavit containing only conclusory allegations. The statute attacked in *North Georgia* had none of the "saving" characteristics emphasized in *Mitchell*.

Relying on those precedents, plaintiffs here claim that the seizure of the Rocky B was deficient in several respects: (1) no pre-seizure notice or hearing was afforded plaintiffs; (2) the complaint filed by defendants consisted of bare conclusory allegations unsupported by an affidavit containing facts to support the claim; (3) there was no meaningful judicial participation in the issuance of the writ; (4) no "extraordinary situation" existed which would justify summary seizure,[3] and (5) no opportunity for a post-seizure hearing was provided.

---

[3] In *Fuentes v. Shevin, supra,* the Supreme Court outlined the "extraordinary situations" exception:

"There are 'extraordinary situations' that justify postponing notice and opportunity for a hearing. *Boddie v. Connecticut,* 401 US [371], at 379 [91 S Ct 780, at 786, 26 L Ed 2d 113]. These situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance." 407 US at 90-91. (Footnotes omitted.)

Several federal courts have relied on this exception in upholding *maritime* seizures. *See, e.g, Merchant's National Bank v. Dredge General G.L. Gillespie,* 663 F2d 1338 (5th Cir 1981); *Central Soya Co., Inc. v. Cox Towing,* 417 F Supp 658 (ND Miss (1976);

The question is whether that line of cases applies to a chapter 783 proceeding, where the purpose of the statutory scheme is to permit the perfection of a statutory lien against a specific vessel and where any judgment that may be entered is against that vessel only and may be collected, if at all, from the sale of the vessel. ORS 783.110. The situation presented is somewhat analogous to a construction lien claimed by a materialman who provides material to a contractor in the construction of a commercial building. The owner may have paid the contractor in full, but the contractor may not have paid the laborers or materialmen. Those unpaid suppliers are entitled to a lien against the building, even though they have no claim against the owners. The lien may be perfected by a filing within the time permitted by ORS 87.035, and no notice is required either before or after filing, although failure to give the post-filing notice specified in ORS 87.039 precludes the lien claimant from recovering costs and attorney fees.

It is true that filing a lien against real property is not quite as drastic as seizing a vessel. However, the filing of a lien constitutes a restraint on the alienation of the property and may cause irreparable harm to the owner; for that reason, the lien expires six months after it is filed, unless an action is commenced to foreclose it. ORS 87.055. There is no filing procedure under chapter 783, the statutory lien being perfected only by seizure, which must be accomplished within one year after the cause of action has accrued.

█ The analogy is by no means complete, but it suggests that in the context of due process there may be a weighing of the rights of the parties to determine whose due process has been denied. Under chapter 783, as in maritime liens, the concept that the vessel, apart from its owner, has incurred a liability is fundamental in the context of the arrest or seizure of vessels. *Merchant's National Bank v. Dredge General G.L. Gillespie,* 663 F2d 1338, 1345 (5th Cir 1981).[4] In *Cordrey v.*

---

*Alyeska Pipeline Service Co. v. Bay Ridge,* 509 F Supp 1115 (D Ala 1981), *appeal dismissed* 703 F2d 381 (9th Cir 1983); *Karl Senner, Inc. v. M/V Acadian Valor,* 485 F Supp 287 (ED La 1980).

[4] Although federal cases ruling on the constitutionality of procedures employed in maritime seizures are not authoritative in the context of a nonmaritime seizure, they delineate the historical and practical distinctions between admiralty and common law and, by analogy, aid in determining the due process required in the present context.

*Steamship "Bee,"* 102 Or 636, 651, 201 P 202 (1921), the court quoted from *Keating v. Spink,* 3 Ohio St 105, 62 AD 214 (1893):

" 'This statute, then, as stated by the court in the *Canal-Boat Huron v. Simmons,* 11 Ohio [459, 461 (1842)], "treats the boat as a person, and makes it responsible in its own name for all debts contracted for its use, and for all injuries committed against persons or property on board, by her officers or crew." The liability is upon the craft — the proceeding is against the craft — and the judgment operates alone upon the craft. Its seizure is indispensable to the jurisdiction of the court, and its continued custody, unless released upon bond and security, indispensably necessary to the further proceedings, after final judgment.' "

■    The doctrine of the ship's liability, apart from that of its owner, and the concept that the lien creates an interest in the vessel do not immunize the procedure from the constraints of due process. However, as the Supreme Court observed in *Mitchell v. W.T. Grant Co., supra,* 416 US at 610:

"* * * [The] requirements of due process of law 'are not technical, nor is any particular form of procedure necessary.' Due process of law guarantees 'no particular form of procedure; it protects substantial rights.' 'The very nature of due process negates any concept of inflexible procedures universally applicable to any imaginable situation.' (Citations omitted.)"

■    The fundamental requisites of due process are adequate notice and an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.,* 339 US 306, 313-16, 70 S Ct 652, 94 L Ed 865 (1950). If the procedures provided by chapter 783 meet those fundamental requirements, they should be upheld. Although there is no statutory requirement that the owner of the vessel be given notice of its seizure, in *Cordrey v. Steamship "Bee," supra,* 102 Or at 650, the court said that "seizure of one's property is notice to him of an invasion of his rights, calling upon him to defend." It held that failure to require written notice did not offend due process. Despite the fact that notice by seizure has been criticized of late, it is particularly appropriate in the seizure of a seagoing vessel, the identity or whereabouts of whose owners may be unknown, or whose owners may be outside the jurisdiction.

As the court stated in *Cordrey v. Steamship "Bee,"* *supra,* 102 Or at 653:

"* * * In the case of a seagoing vessel especially, which is constantly in charge of a master or other representative of the owner, or of the owner himself, the mere taking is such an invasion of property rights as to notify the owner as a practical matter, that he must defend. * * *"

It is reasonable to assume that the master of a vessel will notify the owner or the owner's insurer in the event of seizure. We cannot say that the notice provided by chapter 783 is inadequate because it is not provided prior to the seizure of the vessel. There is no lien prior to seizure and, if prior notice were required, it would in many instances enable the owner to frustrate the perfection of the lien and its priority by putting out to sea or alienating the vessel. The lien provided by ORS 783.010 gives a lienor a sufficient interest in the vessel to detain it so that the lien can be perfected and judicially enforced. For those reasons, we conclude that neither pre-seizure notice nor hearing is constitutionally required.

Plaintiffs challenge the statute's lack of a statutory provision for a prompt post-seizure hearing, but they ignore ORS 783.090. Although that section may not articulate the procedure to be followed as completely as we might desire, it expressly allows an owner, agent or consignee to secure the immediate release of a vessel by entering into "an undertaking in favor of plaintiff, with sufficient security, to be approved by the judge or clerk of the court in which the action is pending." We are bound to uphold the constitutionality of legislation when it is reasonably susceptible to an interpretation that will permit it. *City of Portland v. Welch,* 229 Or 308, 316, 364 P2d 1009, 367 P2d 403 (1961). Just as the court in *The Victorian,* *supra,* n 2, limited the application of what is now ORS ch 783 to nonmaritime liens in order to avoid conflict with the Congressionally mandated exclusive federal jurisdiction over maritime liens, we should construe ORS 783.090 to comport with due process requirements, if it is susceptible to such a construction.

It is clear that the statute permits the owner, after seizure, to request the judge to approve the security he must post in order to obtain the release of the vessel. Given that

express statutory procedure, we construe the statute to permit the owner to obtain a post-seizure hearing to challenge the legality of the seizure, the validity of the claim or the amount claimed in order to fix the amount of the undertaking necessary to release the vessel. Accordingly, the statutory scheme is not invalid on its face. Neither was it unconstitutionally applied in this case. Here, plaintiffs did not attempt to avail themselves of that procedure. Therefore, we hold that the provisions of ORS chapter 783 and the procedures employed in the seizure of the Rocky B did not violate plaintiffs' due process rights. The trial court did not err in dismissing plaintiffs' claim under 42 USC § 1983.[5]

■■ ■■ Plaintiffs also contend that the requirements for issuance of provisional process set forth in ORS 29.020 *et seq* (now codified in ORCP 81-85) apply to the seizure of a vessel pursuant to chapter 783 and that defendants are liable for failure to follow those procedures. As we stated in *Huntington v. Coffee Associates,* 43 Or App 595, 603 P2d 1183 (1979):

> "ORS 29.020 to 29.075 were enacted in 1973 in response to the U.S. Supreme Court decisions in *Fuentes v. Shevin,* 407 US 67, 92 S Ct 1983, 32 L Ed 2d 556 (1972), and *Sniadach v. Family Finance Corp.,* 395 US 337, 89 S Ct 1820, 23 L Ed 2d 349 (1969), which invalidated statutory provisional remedies in many states, including Oregon, as not meeting the requirements of due process because they permitted prejudgment attachment, garnishment or repossession provisional processes without a prior hearing.

> "In adopting ORS 29.020 to 29.075, the legislature established procedural requirements for all types of provisional process, with respect to all of which judicial intervention is necessary and, except for extraordinary circumstances, notice and hearing are required. * * *"

ORS chapter 783 provides a complete set of procedures whereby a creditor may acquire, perfect and enforce a lien in a narrowly defined and historically unique area of law.

---

[5] 42 USC § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and Laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. * * *"

The *Sniadach* line of cases, in response to which ORS 29.020 *et seq* were enacted, are inapposite to the seizure of a vessel under ORS 783.030 *et seq*, where seizure is necessary both to perfect a creditor's interest in the property and to invoke the court's jurisdiction. Moreover, the provision for pre-seizure notice and hearing mandated by Oregon's provisional process statutes might defeat a creditor's ability to perfect and enforce a statutory lien against the vessel by providing an opportunity for the vessel to abscond from the court's jurisdiction. Given those statutory purposes for the seizure of a vessel, the process does not appear to be provisional in the ordinary sense of that term any more than does the filing of a construction lien.[6] For these reasons, we conclude that the procedures set forth in ORS 29.020 *et seq* are inapplicable to the seizure of a vessel pursuant to ORS 783.010 *et seq*.

■        Plaintiffs' reliance on *Lent v. Robinson,* 47 Or App 579, 615 P2d 338 (1980), is misplaced. In *Lent,* we indicated that the plaintiffs, who had obtained a prejudgment *attachment* and garnishment, were required to comply with the 1973 statutory requirements for provisional process, even when the claimed purpose of the *attachment* was to obtain *quasi in rem* jurisdiction. The question presented in *Lent* was whether the trial court's order quashing the writ of attachment was appealable. We held that it was not, because the trial court was without authority to issue the writ in the first place. The plaintiffs contended that the court had authority, because it was necessary for the court's jurisdiction. The record revealed, however, that the defendant had been served by substituted

---

[6] Prejudgment seizures of property to which the requirements for provisional process apply are limited by the definition of "provisional process." Former ORS 29.020(5) (*repealed by* Or Laws 1981, ch 898, § 53) defined "provisional process" to mean:

"[1] attachment under ORS 29.110 to 29.400, [2] garnishment under such attachment, [3] replevin or claim and delivery under ORS 29.080 to 29.095 or [4] any other legal or equitable judicial process or remedy which before final judgment enables a plaintiff, or the court on behalf of the plaintiff, to take possession or control of, or restrain use or disposition of, property in which the *defendant* claims an interest." (Emphasis supplied.)

The defendant in an action under ORS 783.030 is the vessel, not its owners. The emphasized language in the quoted statute suggests that the legislature intended the requirements of provisional process to apply only to *in personam* or *quasi in rem* proceedings against a debtor, not to strictly *in rem* proceedings against property. We express no opinion as to the effect of those statutes when the owners of the vessel are parties defendant and a judgment is sought against them personally.

service, sufficient to obtain jurisdiction over him, but not sufficient to give him the personal notice required by the provisional process statutes. Former ORS 20.065(2) (*repealed by* Or Laws 1981, ch 898, § 53). The plaintiffs relied on the pre-1973 statutes authorizing prejudgment attachment without notice (former ORS 29.110, *repealed by* Or Laws 1981, ch 898, § 53), which had not been expressly repealed by the 1973 legislation. We concluded, however, that, because the 1973 legislation conflicted with the prior legislation, it controlled to the extent that it conflicted with the earlier statutory scheme. *See Davis v. Wasco IED,* 286 Or 261, 272, 593 P2d 1152 (1979). Attachment and garnishment are clearly provisional processes covered by the 1973 statutory scheme; seizure of a vessel to perfect a statutory lien is not. We find no conflict between the provisional process statutes and chapter 783.

■ Plaintiffs contend that the "wrongful" seizure of the Rocky B constituted conversion and that defendants are liable to plaintiffs for the full value of the vessel. Because we have concluded that the defendants were within their rights in seizing the vessel, plaintiffs have not stated a claim for conversion.

■ Plaintiffs further contend that defendants' conduct in causing the seizure of the Rocky B constituted an abuse of process. Abuse of process is the perversion of a legal procedure to accomplish an ulterior purpose when the procedure is commenced in proper form and with probable cause. *Larsen v. Credit Bureau,* 279 Or 405, 408, 568 P2d 657 (1977); *Kelly v. McBarron,* 258 Or 149, 154, 482 P2d 187 (1971). Dean Prosser identified the essential elements of the tort:

> " "* * * [F]irst, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. * * *' Prosser, Law of Torts 857, § 121 (1971). (Footnotes omitted.)" Quoted in *Larson v. Credit Bureau, supra,* 279 Or at 408.

Plaintiffs appear to argue that defendants asserted the priority of North Bend's lien over PCA's mortgage in order to coerce PCA to pay plaintiffs' indebtedness to North Bend. Taking those allegations as true, however, they fail to state a claim for abuse of process. North Bend had the right to attempt to collect the amount owed it and had the right to assert and perfect its lien by seizing the vessel. It was also entitled to a judicial determination whether its lien was prior to that of PCA. If its lien was not prior to PCA's mortgage, there was no way it could "coerce" the latter into paying North Bend, unless PCA preferred to pay it rather than have the vessel sold subject to its mortgage. If, on the other hand, North Bend had priority, PCA would be required to pay off that lien in order to protect its junior lien. If threats by North Bend to foreclose constitute coercion, that is part of the process, not an abuse of it.

There is nothing unusual about holders of liens commencing foreclosure proceedings in the hope that they may persuade another lienor that they may have priority so that the other lienor will buy them out. The commencement of such proceedings does not become an abuse of process merely because the initiator hopes to obtain a benefit short of a foreclosure sale. Restatement (Second) of Torts 475, § 682, *comment b* (1977). It is absurd to say, then, that a lienor claiming priority has acted improperly in doing what the law requires to effectuate its rights — seizing the vessel and asserting its priority.

Although defendants are willing to "concede" that it might be an abuse of process if defendants had seized the vessel to acquire a lien they *knew* was inferior to PCA's and had falsely asserted priority in order to compel PCA to pay off plaintiffs' debt, plaintiffs have not alleged that defendants asserted the priority of North Bend's lien in the knowledge or reasonable belief that it was inferior to that of PCA.[7]

---

[7] In plaintiffs' third claim for relief, they assert:

"In furtherance of defendants' improper purpose, defendants claimed an illegal and wrongful lien on the 'Rocky B' which defendants asserted was superior to the Preferred Ships Mortgage of PCA, which forced PCA to file its own foreclosure action on the 'Rocky B' in order to protect its interests. Further, defendants told PCA that they would harass and annoy it and plaintiffs with their wrongful lien claim until PCA paid the claimed debt, and would persist in their wrongful claim of lien even though they were told their lien was wrongful, and

Defendants' motions for dismissal and summary judgment on this claim were properly granted.

■■ ■■ Under the terms of the mortgage between plaintiffs and PCA, the seizure of the Rocky B constituted an act of default. Plaintiffs allege that before the seizure of the vessel they and PCA had agreed that, although the first payment on the mortgage was due in October, 1980, PCA would not foreclose, but would allow plaintiffs to make payments from their profits in the 1980-81 fishing season, which commenced in December, 1980. Defendants' actions in causing the seizure of the Rocky B allegedly interfered with those agreements, to plaintiffs' detriment.

In order to state a claim for intentional interference with a business relationship, facts must be alleged that show an intentional interference with the plaintiff's business relationship, that the interference was for an improper purpose or was by improper means and that, as a result, the plaintiff was injured beyond the fact of the interference itself. *Straube v. Larson,* 287 Or 357, 361, 600 P2d 371 (1979); *Erlandson v. Pullen,* 45 Or App 467, 471, 608 P2d 1169 (1980).

Plaintiffs have failed to allege sufficient facts to entitle them to relief under this theory. In *Straube v. Larson, supra,* 287 Or at 361, the court stated:

"'* * * [T]o be entitled to go to a jury, plaintiff must not only prove that defendant intentionally interfered with his business relationship but also that defendant had a duty of non-interference; *i.e.,* that he interfered for an improper purpose rather than for a legitimate one, or that defendant used improper means which resulted in injury to plaintiff. * * *'"

In support of this claim for relief, plaintiffs allege only that the seizure of the Rocky B was "wrongful and illegal," as a result of which PCA "was forced to" foreclose its lien. We have already decided that defendants' seizure was authorized, and

---

their procedures were improper. After PCA filed its foreclosure action, which foreclosure was solely and exclusively caused by defendants' wrongful seizure, defendants persisted in their claim of lien."

We have already concluded that the procedure whereby the lien was claimed was not wrongful or illegal. As asserted in this context, we conclude that the words "wrongful and illegal" must refer to the status of the lien itself and not to the fact that defendants have asserted a superior lien.

there is no allegation that defendants seized the vessel for the purpose of causing PCA to commence foreclosure proceedings. In the absence of an allegation that defendants sought to accomplish the seizure for other than a legitimate purpose, *e.g.,* to enforce its lien pursuant to ORS 783.010, defendants' motions for dismissal and summary judgment were properly granted.

The trial court did not err in granting the individual defendants' motion to dismiss or North Bend's motion for summary judgment.

Affirmed.