Argued and submitted April 5, charges dismissed July 31, 1984

In re Complaint as to the Conduct of
# JAMES M. GILLIS,
*Accused.*

In re Complaint as to the Conduct of
# KURT CARSTENS,
*Accused.*
(No. 82-81; SC S30292)
686 P2d 358

Richard A. Roseta, Eugene, argued the cause for Accused Gillis. With him on the brief was Flinn, Brown & Roseta.

Kurt Carstens, pro se.

Donald W. Green, III, Portland, argued the cause for the Oregon State Bar. With him on the brief was J. Phillip Holcomb, Portland.

## PER CURIAM

In this case two attorneys are charged with violating DR 7-110(B) of the Code of Professional Responsibility, which, in pertinent part, provides:

"In an adversary proceeding, a lawyer shall not communicate, or cause another to communicate, as to the merits of the cause with a judge or an official before whom the proceeding is pending, except:

"(1)  In the course of official proceedings in the cause.

"* * * * *

"(4)  As otherwise authorized by law or by Section A(4) under Canon 3 of the Code of Judicial Conduct."

In substance, attorney Carstens is charged with having caused his partner Gillis to engage in an unethical *ex parte* communication with a judge affecting a pending marriage dissolution case, and attorney Gillis is charged with actually having made the *ex parte* communication. There is little dispute as to the material facts; the issue is whether the facts disclose a violation of DR 7-110(B).

In September, 1980, Carstens filed a petition for dissolution of marriage on behalf of Mrs. Clausen. In November, 1980, Mr. Clausen appeared in the proceeding, represented by counsel. In May, 1981, after considerable discovery as to the parties' financial circumstances, Mr. and Mrs. Clausen appeared with their respective attorneys before Judge A.R. McMullen for a show cause hearing. As a result of the hearing, Judge McMullen issued a temporary order which, *inter alia,* restrained Mr. Clausen from dissipating any marital assets.

Mrs. Clausen complained persistently to Carstens that despite the order, Mr. Clausen was engaging in conduct that would reduce the value of the marital estate. Among the actions complained of were the alleged mortgaging of a property belonging to an automobile dealership, in which Mr. Clausen and his brother had controlling interest, for a sum greatly in excess of the value of the property, and the alleged sale of a boat for less than market value.

About three or four weeks after the May show cause hearing, Mrs. Clausen brought to Carstens' attention a title

company's letter describing a lot book search, which disclosed that a mortgage on the property in question had been recorded three days prior to the show cause hearing. The mortgage was to secure a much larger sum of money than the testimony at the show cause hearing indicated as the amount by which the property was encumbered. Indeed, the total amount, that is, the sum mentioned at the show cause hearing plus that in the encumbrance not mentioned at the show cause hearing, was so large as to constitute eradication of a major component of the value of the marital estate.

Carstens demanded of Mr. Clausen's lawyer information concerning the sale of the boat. It was reported to Carstens that Mr. Clausen claimed that Mrs. Clausen had consented to the sale. His lawyer advised Carstens of the terms of the sale and that the net proceeds would be held in the lawyer's client's trust account for disposition by the court.

Mrs. Clausen also complained that she was unable to obtain information concerning, or access to, certain bank accounts in the parties' joint names and that Mr. Clausen's brother was advising him on various means by which he could reduce (on paper only) his net worth.

Mr. Carstens presented his client with two tactics that might be employed to control her husband's behavior. One of these was to seek a contempt citation against Mr. Clausen for violation of the court's restraining order. Carstens expressed his view to Mrs. Clausen that such a device would be of limited effectiveness. The other was some form of receivership under which Mr. Clausen's ability to dispose of property would be restricted. Carstens told Mrs. Clausen that he was not sure that a receivership was feasible in a domestic relations context and asked her if it should be explored. She replied in the affirmative.

Carstens gave the research problem to his partner, Gillis, apparently for the reasons that Gillis had some experience in commercial matters and was highly respected within the firm for his research abilities. The results of Gillis' research were incorporated into a memorandum which was presented to Carstens. The memorandum concluded that a receivership could be imposed to conserve a marital estate under certain factual circumstances which appeared to be

present in Mrs. Clausen's case as Gillis then understood it, and that it could be had *ex parte.*

This memorandum languished for some time on Carsten's desk. Other matters were pressing and required attention, he explained. However, in response to promptings from Mrs. Clausen, he reviewed the memo and reported its contents to Mrs. Clausen. Mrs. Clausen wanted to proceed with the receivership, and that aspect of the case was assigned to Gillis.

In late July, Gillis thoroughly interviewed Mrs. Clausen. On the basis of the impression of the situation that he gleaned from Mrs. Clausen and his research, he determined that it would be advisable to proceed *ex parte* without notice to Mr. Clausen or his lawyer in order to prevent Mr. Clausen from disposing of assets in view of an impending receivership. He was aware of DR 7-110(B) and believed that proceeding *ex parte* would not violate the rule.

On August 20, 1981, Gillis appeared *ex parte* before Judge McMullen with a motion and order for appointment of a receiver. The motion and order were supported by an affidavit executed by Mrs. Clausen. Judge McMullen carefully reviewed the motion and order. Initially, he was not satisfied that the motion and order stated sufficient grounds for *ex parte* appointment of a receiver. Gillis stated to the judge that there were additional facts, and the judge indicated that if those additional facts were included in the documents submitted to him, he would reconsider. Gillis redrafted the documents and submitted them to the judge the next day. Judge McMullen testified to the effect that at the time that the second order was filed he felt that there was an adequate statutory and factual basis for an *ex parte* order, and he granted it. The judge made it very clear in his testimony before the Trial Board that the appointment was only temporary until a hearing actually scheduled in the order could be had. The statute, former ORS 29.065, required a hearing between the third and seventh day after the court's order; however, the earliest available date for the hearing was September 11 due to the court's crowded docket.

The order was served on Mr. Clausen on August 25. His attorney, Mr. Owens, was out of town at the time. The accuseds' law firm had been apprised beforehand that Mr.

Owens' schedule would cause him to be absent, although Gillis had no actual knowledge of this. Carstens was not present and played no role in the *ex parte* presentation. He knew, however, that Gillis was going to seek an *ex parte* order. Hearings took place on September 11 and 18. The order imposing the receivership was vacated.

At the time the receivership was imposed, Mr. Clausen and his brother were owners and operators of the car dealership, property of which had been encumbered in May, as stated above, and had started another dealership in a different location. As a result of the imposition of the receivership, the credit on which the businesses depended was withdrawn and the businesses failed. Judge McMullen testified on cross-examination by the Bar that even though he vacated the receivership order, he would have found Mr. Clausen in contempt for violating the original order forbidding dissipation of the marital estate, had he been asked to do so.

The Trial Board held that the communication by Gillis to the trial judge was on the merits of the cause and, consequently, reached the exceptions on which the accused relied in DR 7-110(B)(1) and (4).

With respect to the exception in DR 7-110(B)(1), in each opinion the Board held that the *ex parte* communication by Gillis with the judge was not in the course of official proceedings in the cause. The Trial Board did not explain this holding. In light of the basis upon which we decide these matters, we neither approve nor disapprove the holding.

With respect to the exception in DR7-110(B)(4) the Trial Board held that the *ex parte* contact by Gillis with the trial judge was not authorized by law. The Trial Board held, however, that Carstens' conduct did not violate DR 7-110(B), because he did not actually engage in any *ex parte* communication, and he did not direct that his partner engage in any. It held that Gillis had violated the rule.

The Disciplinary Review Board found that neither Gillis nor Carstens had violated the rule because the communication in question was not on the merits of the cause. The Disciplinary Review Board cited *In re Bernard K. Smith,* 295 Or 755, 670 P2d 1018 (1983), in support of its holding. We have serious doubt that the communication here involved is

within the rule we pronounced in that case, but we need not resolve that doubt by reason of our disposition of this matter on another ground.

The Oregon State Bar petitions this court to hold that Gillis and Carstens violated DR 7-110(B). We decline to do so because we conclude that the accuseds had good reason to believe, and did believe, that the *ex parte* communication to Judge McMullen was "otherwise authorized by law" within the meaning of DR 7-110(B)(4).

Gillis' research led him to former ORS 31.020(1) and 29.020 to 29.075. Those sections have been repealed, and we shall discuss some pertinent legislative history concerning that repeal later in this opinion. ORS 31.020(1) provided:

"A receiver may be appointed by the court in the following cases:

"(1) Provisionally, before judgment or decree, on the application of either party, when his right to the property, which is the subject of the action, suit or proceeding, and which is in the possession of an adverse party, is probable, and the property or its rents or profits are in danger of being lost or materially injured or damaged."

Gillis concluded that although the primary subject of the proceeding was dissolution of the marriage, the property of the parties that could be divided by the court under ORS 107.105(1)(e) was also a subject of the proceeding in the broad sense. On the basis of the complaints of Mrs. Clausen he believed that this property was in danger of being "lost" in the sense that Mr. Clausen would disobey the restraining order by disposing of the property or encumbering it and disposing of the money thereby received.

Former ORS 29.020(5) stated that "provisional process" meant any legal or equitable judicial process or remedy that before final judgment enabled a plaintiff, or the court on behalf of a plaintiff, to take control of or to restrain use or disposition of property in which the defendant claimed an interest.

In pertinent part, former ORS 29.055 gave the court power to issue provisional process "in" property which the court might find, on proper showing by sworn statement, to be in danger of concealment or transfer by a defendant in

500

possession thereof who was engaging or about to engage in conduct that would place the property in danger of concealment or transfer to an innocent purchaser.

In addition to the statutory authority of the court to appoint a receiver, Gillis relied on language of this court, which he brought to the attention of Judge McMullen. Gillis cited *Muellhaupt v. Strowbridge Est. Co.,* 136 Or 99, 103, 298 P 186 (1931), where this court said:

"In a proper case the power to appoint a receiver is necessarily inherent in a court of equity. This power is not conferred by statute, but exists independently of it: *Wm. H. Taylor Corp. v. Oregon L. & T. Co.,* 116 Or. 440 (241 P. 388)."[1]

The statement, as made in *Muellhaupt,* is probably dictum, but it was made. Since 1971 a court sitting in marriage dissolution proceedings has had the full power of a court of equity, ORS 107.405, and as such has power for provisional appointment of a receiver either under the statute or inherently, assuming, *arguendo* only, that such inherent power exists.[2]

As to proceeding *ex parte* for the appointment of a receiver, this court in *Anderson v. Robinson,* 63 Or 228, 233, 126 P 988, 127 P 546 (1912), noted that the statutes did not require notice of the application for appointment. The court went on to state, however, that notice ordinarily should be given. The court then spoke to exceptions:

"There may be exceptions to this rule, such as * * * where it is important that the court should interfere before there is time to give notice."

63 Or at 233.

Although the statutory law concerning provisional remedies found in former ORS 29.020 to 29.075 did not expressly allow or forbid *ex parte* application for appointment

---

[1] The court's reference to the power not being conferred by statute must have been to make the point that even if there were no statute, a court of equity could appoint a receiver, for, as a matter of fact, there was statutory authority for provisional appointment of a receiver in O.L. § 1108(1) (in effect when the cause arose) and § 32-702, O.C. 1930 (in effect when the case was decided).

[2] *Compare Grayson v. Grayson,* 222 Or 507, 352 P2d 738 (1960), speaking to authority of a court sitting in divorce proceedings to appoint a receiver, when such a court was a court of only limited jurisdiction.

of a receiver, the statements of this court concerning the issue did indicate that such application might be justified where there was a necessity for the court to act quickly and without notice in the interests of preserving the status quo.[3]

That the law was not settled at the time this *ex parte* application was made to Judge McMullen further appears from the work of the Council on Court Procedures. The Council was created by the legislature in 1977 and has since been in the process of promulgating, subject to legislative disapproval or amendment, rules of civil procedure. ORS 1.725 to 1.750. The Council is required to submit the rules it has "adopted" to the legislature at the beginning of each regular session of the legislature, ORS 1.735. During the interim between the 1979 and 1981 sessions of the legislature the Council turned its attention to the matter of provisional remedies and in December, 1980, submitted its report. The report discloses that the Council had adopted Rule 80 and Rule 83 to supersede ORS chapter 31 concerning receiverships and those parts of chapter 29 concerning provisional process discussed above.

The Council's "COMMENT" to Rule 80 states in part:

> "This rule clarifies the procedure for a receivership now covered by ORS chapter 31. It adds necessary provisions for notice and hearing. Although some receiverships are post judgment, the rule is included with provisional remedies because of the provisions covering pre-judgment receivership."

"Oregon Rules of Civil Procedure and Amendments," promulgated by Council on Court Procedures, December 13, 1980, page 53. The superseding rules are now found as ORCP 80 and 83.

---

[3] *Compare Huntington v. Coffee Associates,* 43 Or App 595, 601-602, 603 P2d 1183 (1979):

> "[The provisional remedy statutes] make possible immediate action to protect the petitioner's interest in cases in which there is reason to believe protection may be necessary. * * * All of these sections permit action to be taken on an *ex parte* application, but only under narrowly circumscribed conditions. They are the options open to the court in the interim between the petition for provisional remedy and the show cause hearing."

It is fair to say that prior to the effective date of ORCP 80 and 83, a claimant to an interest in property arguably could obtain temporary appointment of a receiver without notice to a defendant possessing the property if it could be shown to a court sitting in a matter in which the property was a subject of the cause that immediate action was necessary to prevent the defendant from disposing of the property or concealing it.

In the matter before us, the accuseds' client had obtained an order of the court enjoining the defendant in possession from disposing of property subject to disposition by the court. The client reported to the accuseds facts from which it appeared that the defendant was disobeying the court's order and was concealing or dissipating the marital assets. Eventually, in the petition for issuance of provisional process, the client swore to the truth of those allegations.[4] On the basis of that sworn statement, Judge McMullen found that a receiver should be appointed until a hearing could be held.

It has been argued that the exception "otherwise authorized by law" in DR 7-110(B)(4) is available only if the procedure was actually authorized by law. We do not propose to decide in the context of this disciplinary proceeding the issue of whether the trial court erred in its temporary appointment of a receiver on *ex parte* application. The state of the statutory and caselaw was such that on the basis of Mrs. Clausen's sworn allegations, Gillis and the experienced trial judge believed the application should be granted.

Hindsight might, or might not, justify finding that both were in error as to the law, and that Gillis and Carstens should have proceeded with some other method to enforce the court's prior order. We do not find that either accused acted in bad faith. We do find that they researched the law and acted according to their good faith interpretation of the law and in furtherance of the course which they felt their client should follow in the pending litigation.

---

[4] The Bar contends that vigorous investigation of the client's complaints concerning the defendant's activities would have shown the inaccuracy of those complaints. Carstens did obtain verification that the boat had been sold. Gillis testified to some further investigation that indicated to him the facial validity of some of the client's complaints. He pointed out that the client's financial resources were insufficient for further investigation.

For the purpose of this proceeding, we find that Gillis' communication was "authorized by law" and that he did not violate DR 7-110(B). The Bar acknowledged that Carstens could not be guilty unless Gillis was.

We hold in favor of both accuseds and award to them judgment for their actual and necessary costs and disbursements.